ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE CAROLINA

| | |
|---|---|
| CARIBBEAN TOWER SITES, LLC.,<br><br>Demandantes<br><br>v.<br><br>BRIAN SAFREED Y BLUE WAVE TECH CORP.<br><br>Demandados | CIVIL NÚM.: FPE 2013-058<br>(402)<br><br>TRASLADADO DE SALA SUPERIOR DE SAN JUAN<br>CIVIL NÚM.: KEP 2013-410<br><br>SOBRE:<br><br>APROPIACIÓN INDEBIDA DE SECRETOS COMERCIALES; INTERDICTO PRELIMINAR Y PERMANENTE; DAÑOS Y PERJUICIOS. |

## DEMANDA JURADA ENMENDADA[1]

AL HONORABLE TRIBUNAL:

COMPARECE Caribbean Towers Sites, LLC. ("Caribbean"), por conducto de sus abogados que suscriben, y respetuosamente expone, alega y solicita:

### I. PARTES

1. La demandante Caribbean es una corporación debidamente organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, con oficinas centrales localizadas en San Juan, Puerto Rico. Su dirección física es 4633 Calle Loiza, San Juan, PR 00913; y su dirección postal es 1357 Avenida Ashford, PMB 371, San Juan, PR 00907. Caribbean se dedica a identificar posibles localidades para la instalación y construcción de torres de telecomunicaciones, la negociación de contratos de arrendamiento para la instalación y construcción de dichas torres y el equipo necesario para proveer servicios de

---

[1] En esta misma fecha se presentó "Verified Amended Complaint" ante este Honorable Tribunal, debidamente juramentada, conforme a lo requerido por la Ley 80, por John Campbell, Presidente de Caribbean, quien no conoce el idioma español. No obstante lo dispuesto por la Regla 8.7 de las de Procedimiento Civil, 32 L.P.R.A. App. V., la cual permite la presentación de escritos en el idioma inglés ante los tribunales de justicia, se acompaña la presente traducción fiel y exacta del escrito original para beneficio de este Honorable Tribunal.

telecomunicaciones inalámbricas en Puerto Rico y en las Islas Vírgenes de los Estados Unidos ("USVI") y la operación y manejo de dichas torres de telecomunicaciones.

2. El demandado Brian Safreed ("Safreed") es mayor de edad, residente de San Juan, Puerto Rico, y su dirección residencial es 4633, Avenida Isla Verde, Cond. Castillo del Mar, Apto. 503, Carolina, PR, 00979-5300.

3. Por información y creencia, Blue Wave Tech Corp ("Blue Wave") es una corporación organizada y existente bajo las leyes de Puerto Rico, de la cual el codemandado Safreed es propietario en su totalidad. Safreed en distintos momentos prestó los servicios contratados con Caribbean indistintamente personalmente o a través de dicha corporación. No obstante la contratación original por los servicios objeto de la presente demanda por Caribbean fue con Safreed en su carácter personal, posteriormente éste le solicitó a Caribbean que efectuara los pagos por sus servicios a nombre de la compañía Blue Wave, alegando razones contributivas. Por lo tanto, Blue Wave tiene para con Caribbean las mismas responsabilidades y obligaciones, incluyendo el deber de lealtad, que el señor Safreed también mantenía para con la parte demandante. En cualquier lugar en que lo adelante esta demanda se refiera a "Safreed", dicha mención incluirá por igual alegaciones contra Blue Wave.

## II. HECHOS

4. InSite Wireless Group, LLC ("InSite") posee, opera y maneja facilidades de torres de telecomunicaciones en los Estados Unidos, Canadá, Puerto Rico y las USVI. Como parte de su negocio, InSite alquila espacio en las torres de su propiedad a compañías de telecomunicaciones incluyendo proveedores de servicio inalámbrico. En el curso de sus negocios, compañías de telecomunicacionesproveen a InSite y otras compañías como esta, la información relacionada a las áreas en las cuales interesan

instalar facilidades de telecomunicaciones para mejorar o expandir su área de cobertura. Estas áreas en las cuales se interesa instalar equipo para mejorar o expandir su área de cobertura, se conocen en la industria como "search rings" (o "áreas de búsqueda"). Luego de que las compañías de telecomunicaciones le proveen a InSite información en torno a sus áreas de búsqueda, ésta, ya sea por sus propios medios o por medio de contratistas, identifica terrenos para la construcción de torres de telecomunicaciones.

5. Comenzando en 2007, InSite Towers, LLC, una compañía subsidiaria, propiedad de InSite, autorizada para hacer negocios en las USVI, contrató los servicios de Caribbean para que ésta, entre otras cosas identificara terrenos para la construcción de torres de telecomunicaciones en sus áreas de búsqueda y para el desarrollo y construcción de dichas torres en Puerto Rico y en las USVI.

6. Allá para el año 2007-2008 Caribbean, por conducto de su Presidente John Campbell, contrató a Safreed para que éste fungiera como Director de Operaciones de la compañía y proveyera servicios de localización de terrenos para arrendamiento para la eventual construcción e instalación de torres de telecomunicaciones en las USVI. Caribbean construiría las torres para InSite Wireless, quien as su vez sub-arrendaría espacio en las mismas a compañías de telecomunicaciones, incluyendo a CCPR of the Virgin Islands Inc., d/b/a AT&T Mobility ("AT&T").

7. Como parte de sus funciones como agente de Caribbean y bajo la supervisión de John Campbell, Safreed debía realizar las siguientes funciones: (1) identificar los terrenos potenciales para el desarrollo de las torres de telecomunicaciones que satisficieran las necesidades de AT&T en las áreas de búsqueda conocidas como Mary's Fancy/Bonne

Esperance (VI007) y Work and Rest (VI004) (las "Áreas de Búsqueda"); (2) contactar a los dueños de los terrenos interesados en ofrecer sus tierras para el desarrollo de las torres; (3) realizar y coordinar investigaciones de terreno y análisis topográficos del área incluyendo el uso de imágenes aéreas y de satélite (4) hacer ofertas y redactar los borradores de los contractos de arrendamiento o sub-arrendamiento de las torres; y (5) coordinar la planificación y preparación de los planos para los terrenos.

8. Desde el año 2009 en las USVI se emitió una moratoria de tres años que prohibió la emisión de permisos de construcción para torres de telecomunicaciones, por lo que InSite decidió que la manera de proceder con respecto a las Áreas de Búsqueda era firmar contratos de arrendamiento para la localización de facilidades temporeras en las mismas, con miras a eventualmente entrar en contratos permanentes para la construcción de torres de telecomunicaciones, no solo para el uso de AT&T sino también otras compañías de telecomunicaciones.

9. De acuerdo a su encomienda, como representante y en beneficio de Caribbean, Safreed efectivamente identificó múltiples candidatos o potenciales arrendadores y los terrenos donde podían ubicarse las torres de telecomunicaciones, asistió en la negociación de los contratos temporeros y eventualmente firmó los contratos de arrendamiento como Director de Operaciones de Caribbean, para las Áreas de Búsqueda copia de los cuales se incluyen como **Anejos Confidenciales 1 y 2** de esta demanda.

10. El 12 de noviembre de 2013, Caribbean subcontrató con AT&T para la operación y uso de las estructuras temporeras en las Áreas de Búsqueda. Efectivo el 1 de noviembre de 2008, InSite Wireless adquirió de Caribbean los derechos, títulos e intereses de los contratos de arrendamiento y de los sub-

arrendamientos de ubicación de las torres de telecomunicaciones temporeras en las Áreas de Búsqueda. La vigencia de los sub-arrendamientos fue posteriormente extendida mediante una Primera y Segunda enmienda al contrato el 24 de marzo de 2010.

11. En el año 2011, luego de que se levantó la moratoria para construcción de torres en las USVI, Caribbean le solicitó a Safreed que, como agente de ésta, continuara la búsqueda de terrenos prospectivos para la instalación de torres permanentes en las Áreas de Búsqueda, utilizando la información obtenida anteriormente para identificar los terrenos donde se instalaron las facilidades temporeras.

12. En coordinación con John Campbell, Safreed identificó los terrenos y candidatos para el desarrollo de las torres permanentes, sostuvo múltiples comunicaciones con los dueños de los terrenos sobre la naturaleza del proyecto y participó en las negociaciones de los términos y condiciones de los contratos potenciales para las Áreas de Búsqueda.

13. Alrededor del 11 de julio de 2013, Safreed terminó unilateralmente su relación con Caribbean.

14. Inmediatamente luego de la partida de Safreed, Caribbean le solicitó toda la información recopilada con respecto a los Anillos de Búsqueda. Específicamente, Caribbean solicitó que Safreed entregara y produjera toda la información generada y recopilada por él durante su relación de trabajo con Caribbean sobre las Áreas de Búsqueda incluyendo, pero sin limitarse, a: (1) mapas de satélite incluyendo localización ("pushpins") de los terrenos identificados como potenciales localidades para las torres permanentes; (2) número de identificación de dichos terrenos y nombres e información de contacto (incluyendo direcciones, teléfonos y correos electrónicos) de sus dueños o representantes; y (3) todo correo electrónico, carta y cualquier correspondencia intercambiada con

los dueños o representantes de los terrenos. (los "Secretos Comerciales"). Caribbean también le solicitó a Safreed que confirmara por escrito no haber remitido información alguna a algún tercero respecto a las Áreas de Búsqueda, no haber retenido copia de la información relacionada a las Áreas de Búsqueda y una declaración confirmando que no realizaría gestión alguna relacionada a las Áreas de Búsqueda en beneficio de cualquier otra entidad. Safreed, sin embargo, nunca entregó la información referente a los Secretos Comerciales, ni tampoco ejecutó las declaraciones solicitadas.

15. En vista de lo anterior, el 26 de julio de 2013, InSite Wireless envió a Safreed una comunicación escrita solicitando nuevamente que éste le proveyera toda la documentación relativa a los Secretos Comerciales. Caribbean también le solicitó que cesara y desistiera de divulgar los Secretos Comerciales. Véase, Carta de 26 de julio de 2013, que se incluye como **Anejo 3** de esta demanda. Safreed nuevamente rehusó cumplir con el reclamo de InSite Wireless.

16. Así las cosas y ante la negativa de Safreed de cumplir con los requerimientos de Caribbean y/o InSite Wireless, de buena fe y para darle una última oportunidad para evitar un pleito contencioso, el 31 de julio de 2013, InSite Wireless envió a Safreed un último requerimiento en donde se le apercibió que de no entregar y dejar de usar la información solicitada en o antes del 2 de agosto de 2013, se estaría presentado una demanda en su contra. Véase, correo electrónico de 31 de julio de 2013, que se incluye como **Anejo 4** de esta demanda. Safreed nuevamente rehusó cumplir con el reclamo de InSite Wireless

17. Recientemente Safreed comenzó a trabajar como consultor para TowerCo, una compañía que también se dedica a proveer espacio en torres de telecomunicaciones y otra

infraestructura, a compañías de telecomunicaciones y es un competidor directo de InSite Wireless.

18. Para su propio beneficio, Safreed ha divulgado a TowerCo y ha utilizado los Secretos Comerciales para el beneficio económico y la ventaja comercial de TowerCo en detrimento de los intereses de Caribbean. A estos efectos, Caribbean ha recibido información que confirma que Safreed se ha comunicado con dueños de terrenos en las Áreas de Búsqueda y les hizo ofertas para el alquiler permanente e instalación de torres en dichos terrenos a nombre de TowerCo[2].

19. A pesar de las múltiples solicitudes de Caribbean e InSite Wireless para que Safreed cese y desista de utilizar y divulgar los Secretos Comerciales los cuales desarrolló y obtuvo durante su empleo con y a beneficio de, Caribbean y bajo circunstancias que claramente requerían un deber de mantener su confidencialidad, Safreed ha utilizado y continua utilizando los Secretos Comerciales para lucrarse económicamente y conferir una ventaja comercial a TowerCo de manera ilegal.

20. Además, a principios de noviembre de 2013, Caribbean advino en conocimiento de que durante el tiempo que Safreed laboró como agente a favor de Caribbean y habiendo éste acordado que no realizaría las mismas funciones y labores en favor de otras partes que pudieran competir con los intereses económicos y oportunidades de negocio de Caribbean, éste deslealmente y de mala fe había gestionado los contratos y permisos necesarios

---

[2] Los nombres y la información de los clientes especializados de InSite Tower que fueron efectivamente contactados por Safreed y los términos de la negociación se han omitido, pero están disponibles para ser presentados ante este Honorable Tribunal siempre que se asegure su confidencialidad. Conforme al Artículo 11 de la Ley para la Protección de Secretos Comerciales e Industriales, Ley núm. 80 de 3 de junio de 2011, 10 L.P.R.A. Secciones 4131, et seq., ("Ley 80"), "[e]n cualquier acción presentada al amparo de esta Ley, el Tribunal deberá preservar la confidencialidad del alegado Secreto Comercial o Industrial y tomará las medidas que entienda que son necesarias, que podrán incluir, entre otras, emitir una orden protectora que asegure su confidencialidad, el celebrar vistas cerradas, mantener los expedientes de la acción sellados y ordenar a cualquier persona envuelta en el litigio a no divulgar el Secreto Comercial o Industrial sin autorización previa del Tribunal".

para construir dos torres de telecomunicaciones en las áreas de Gallows Bay en Santa Cruz para la compañía Blue Wave Technologies, propiedad del propio Safreed, o en la cuál éste tiene intereses propietarios y otra torre en el área de Bethany en Saint John, por información y creencia también para la compañía Blue Wave Technologies.

21. De Safreed no haber violentado sus obligaciones contractuales con Caribbean y de haber actuado de buena fe y observado su deber de lealtad para con Caribbean, el desarrollo de las torres de telecomunicaciones antes mencionadas hubiese aprovechado a Caribbean y no a Safreed ni a ninguna otra parte.

22. Finalmente, como se explica en más detalle en la Sexta Causa de Acción de esta demanda, durante el año 2013 Caribbean hizo adelantos en su compensación anual a Safreed y al éste terminar unilateralmente su relación a mediados de año resultó en un sobrepago de aproximadamente $30,000 de Caribbean a Safreed.

### III. PRIMERA CAUSA DE ACCIÓN
### APROPIACIÓN INDEBIDA DE SECRETOS COMERCIALES

23. Tras asociarse con una compañía que provee servicios que directamente compiten con los servicios de Caribbean, Safreed ha divulgado y utilizado los Secretos Comerciales los cuales tienen gran valor económico comercial para Caribbean e InSite Wireless.

24. Los Secretos Comerciales fueron obtenidos y desarrollados por medio de inversiones monetarias importantes y esfuerzos considerables, y le otorgan una ventaja competitiva a Caribbean sobre otros competidores con respecto a los Anillos de Búsqueda.

25. Safreed advino en conocimiento de los Secretos Comerciales de Caribbean, durante el término en que prestó

servicios a Caribbean, bajo circunstancias que dan lugar a un deber de mantener su confidencialidad o limitar su uso.

26. Al contactar a los dueños de los terrenos dentro de las Áreas de Búsqueda, para ofrecerles términos y condiciones más atractivas que las que previamente fueron negociadas por Caribbean para la instalación de facilidades de telecomunicaciones permanentes, Safreed divulga y utiliza ilegalmente los Secretos Comerciales, causando daños considerables a Caribbean y una ventaja ilegal a TowerCo.

27. Safreed, ha revelado los Secretos Comerciales para obtener una ventaja directa y un beneficio económico para él.

28. En vista de lo anterior, este Honorable Tribunal debe dictar sentencia declarando que la información que se pretende proteger mediante la demanda de epígrafe, por su naturaleza constituye un "secreto comercial o industrial" conforme a la definición provista por la Ley núm. 80 de 3 de junio de 2011, 10 L.P.R.A. Secciones 4131, et seq., ("Ley 80"), ya que la misma: (1) ha requerido inversiones monetarias importantes y esfuerzo considerable de Caribbean para desarrollarse; (2) no es de dominio o conocimiento público; (3) le otorga a Caribbean una ventaja competitiva sobre otros competidores; y (4) ha sido protegida razonablemente para evitar su divulgación por Caribbean.

29. Además, este Honorable Tribunal debe dictar sentencia declarando que Safreed obtuvo, utilizó y continúa utilizado, los Secretos Comerciales de forma ilegal y en violación a la Ley 80

### IV. SEGUNDA CAUSA DE ACCIÓN
**INTERDICTO PROVISIONAL BAJO LA LEY DE SECRETOS COMERCIALES**

30. De las alegaciones juradas de la parte demandante surgen hechos específicos que establecen claramente que Safreed se apropió indebidamente de los Secretos Comerciales, que ha

divulgado y utilizado la información adquirida de manera ilegal y que le está causando y seguirá causando daños a la demandante.

31. Las alegaciones juradas de la parte demandante demuestran *prima facie* que la parte demandante tiene buenas probabilidades de prevalecer en los méritos de su reclamación.

32. Los remedios que concede la Ley 80, para la protección de los secretos comerciales, son los remedios apropiados para un caso como el de epígrafe.

33. En su consecuencia, este Honorable Tribunal debe expedir una orden provisional, conforme a lo dispuesto por la Ley 80, requiriendo a la parte demandada que paralice, cese y desista inmediatamente, bajo apercibimiento de desacato, del uso o divulgación de los Secretos Comerciales hasta la celebración de una vista de injunction preliminar dentro de los diez (10) días contados a partir de la fecha en que se expida la orden provisional.

34. Este Honorable Tribunal debe, además, ordenar a Safreed que entregue inmediatamente a Caribbean y/o a Insite Wireless, toda la información y los documentos que estén en su poder, incluyendo, pero sin limitarse a: (1) mapas de satélite incluyendo localización ("pushpins") identificando los terrenos potenciales para la construcción de torres permanentes en las Áreas de Búsqueda; (2) número de identificación de dichos terrenos y nombres e información de contacto de los dueños de dichos terrenos o los representantes (incluyendo direcciones, teléfonos y correos electrónicos); y (3) todo correo electrónico, carta y cualquier correspondencia intercambiada con los dueños de dichos terrenos o sus representantes en los últimos seis (6) meses, al igual que anotaciones o resúmenes de las conversaciones telefónicas que sostuvo con los dueños de dichos terrenos o sus representantes en los últimos seis (6) meses.

## V. TERCERA CAUSA DE ACCIÓN
### INTERDICTO PERMANENTE BAJO LA LEY DE SECRETOS COMERCIALES

35. Las actuaciones de Safreed constituyen una clara violación a la Ley 80, al contactar los potenciales arrendadores de los terrenos donde podían ubicarse las torres de telecomunicaciones dentro de las Áres de Búsqueda, para ofrecerles ofertas más atractivas que las que InSite Wireless les ofrece, utilizando y con pleno conocimiento de los Secretos Comerciales - incluyendo los términos y condiciones de los contratos de arrendamiento temporero de torres entre estos con InSite Wireless - y amenazando los negocios potenciales de InSite Wireless en cuanto a los contratos permanentes de las Áreas de Búsqueda.

36. En vista de lo anterior, este Tribunal debe dictar sentencia, ordenando a Safreed a cesar y desistir de: (a) contactar a cualquier persona que haya sido identificada como arrendatario potencial de terrenos para la ubicación de torres de telecomunicaciones dentro de las Áreas de Búsqueda; (b) contactar a cualquier "lead" (entiéndase, persona con información sobre un potencial arrendatario) que haya obtenido Safreed durante su relación contractual con Caribbean respecto al alquiler de propiedades en las Áreas de Búsqueda; y/o (c) utilizar o divulgar los Secretos Comerciales.

## VI. CUARTA CAUSA DE ACCIÓN
### DAÑOS BAJO LA LEY DE SECRETOS COMERCIALES

37. Al utilizar y continuar utilizando los Secretos Comerciales propiedad de InSite Wireless y/o Caribbean por un tiempo indeterminado, proveyendo una ventaja a los competidores de InSite Wireless en el mercado, particularmente a TowerCo, Safreed causó y continuará causando daños a los demandante, los cuales actualmente se estiman en una cantidad no menor de $200,000.00.

38. Los antes mencionados daños incluyen, pero no se limitan a, pérdida de negocios potenciales y descrédito ante sus clientes y patrocinadores y seguirán aumentando mientras continúe la conducta de Safreed y serían sustanciales, aunque son imposibles de calcular en este momento.

39. Además, de Safreed continuar con sus planes de utilizar los Secretos Comerciales de Caribbean para obtener ventajas comerciales indebidas, causará daños adicionales a Caribbean en pérdidas de clientes y ganancias, los cuales serían sustanciales y son imposibles de calcular en este momento.

## VII. QUINTA CAUSA DE ACCIÓN
## INCUMPLIMIENTO CONTRACTUAL

40. Safreed[3] laboró como agente y mandatario a favor de Caribbean en relación a la identificación, negociación y ejecución de contratos de arrendamiento con propietarios de terrenos en las USVI, a los fines de Caribbean poder obtener localidades para desarrollar sus torres para proveedores de servicios de telecomunicaciones.

41. En consideración a los servicios a ser prestados por Safreed como representante, agente y mandatario de Caribbean, la última pagó a Safreed emolumentos por la suma anual de unos $60,000.00 durante los años 2012 y 2013, más bonificaciones adicionales.

42. Durante el tiempo en que laboró como agente a favor de Caribbean, Safreed acordó que no realizaría las mismas funciones y labores en favor de otras partes que pudieran competir con los intereses económicos y oportunidades de negocios de Caribbean.

43. La referida condición de abstenerse de realizar funciones o prestar servicios similares para otras partes distintas de Caribbean, fue una de las consideraciones por las

---

[3] Toda referencia a Safreed incluye indistintamente a Safreed, a Blue Wave, o a ambas.

cuales Safreed recibió pagos por parte de Caribbean a tenor con los acuerdos contractuales entre las partes.

44. Luego de Safreed terminar su relación contractual con Caribbean, la útima entró en conocimiento de que Safreed había violado la referida obligación contractual, y que durante el tiempo en que recibió pagos de Caribbean, Safreed deslealmente y de mala fe, había gestionado los contratos y permisos necesarios para construir una torre de telecomunicaciones en el área de Gallows Bay en Santa Cruz para sí, que aparece a nombre de la compañía Blue Wave, propiedad del propio Safreed. La construcción de dicha torre gestionada por Safree durante el tiempo en que permanecía contratado como agente y mandatario de Caribbean fue terminada durante ese mismo período de tiempo.

45. Igualmente, Safreed desarrolló otra torre de telecomunicaciones en el área de Bethany en Saint John, también durante el tiempo que laboró y recibió pagos como agente de Caribbean y por información y creencia también para la compañía Blue Wave Technologies. Lo anterior, nuevamente en violación de los acuerdos contractuales con Caribbean, de mala fe y en incumplimiento de su deber de lealtad para con Caribbean.

46. De Safreed no haber violentado sus obligaciones contractuales con Caribbean, y de haber actuado de buena fe y observado su deber de lealtad para con Caribbean, el desarrollo de tales torres de telecomunicaciones en Saint Croix y en Saint John hubiera aprovechado a Caribbean, y no a Safreed ni a ninguna otra parte.

47. Igualmente debió aprovechar a Caribbean el desarrollo de cualquier otra localidad ("site") por Safreed mientras permanecía en contrato y devengando pagos como agente de Caribbean, de la cual al presente aún no se tenga conocimiento.

48. Los actos de Safreed en violación a su contrato con Caribbean, así como de sus deberes de lealtad y de obrar de

buena fe para con Caribbean como agente y mandatario han causado pérdidas a la última, y beneficios indebidos a Safreed, que debieran beneficiar a Caribbean.

49. Caribbean tiene derecho a obtener resarcimiento de parte de Safreed por los daños y pérdidas derivadas de los incumplimientos contractuales de Safreed, sus actuaciones de mala fe y sus transgresiones al deber de lealtad debido a Caribbean como representante, agente y mandatario de ésta.

50. Los referidos daños de Caribbean equivalen a los beneficios netos que, para Safreed y/u otros terceros, estén y continúen generando el desarrollo de las referidas torres de telecomunicaciones.

### VIII. SEXTA CAUSA DE ACCIÓN
### COBRO DE DINERO

51. Safreed acordó con Caribbean que los emolumentos por $60,000.00 anuales que las partes establecieron que Safreed devengaría por los servicios y labores realizados para Caribbean a tenor con el contrato entre las partes para los años 2012 y 2013, en vez de serle pagados a razón de $5,000 mensuales según años anteriores, le fueran pagados a razón de $10,000 mensuales durante los primeros seis meses de cada año.

52. De tal modo, los $60,000.00 correspondientes al año 2012, le fueron pagados por Caribbean a Safreed, por adelantado, a razón de $10,000.00 mensuales durante los meses de enero a junio de 2012.

53. Igualmente, los $60,000.00 correspondientes al año 2013 también le fueron pagados a Safreed por adelantado, durante los meses de enero a junio de 2013.

54. Los incumplimientos contractuales de Safreed y sus acciones de mala fe y desleales hacia Caribbean, le permitieron a éste terminar su relación contractual con Caribbean al comenzar a recibir beneficios de las localidades desarrolladas

para torres de telecomunicaciones, en perjuicio de Caribbean. Esa terminación unilateral por Safreed ocurrió el 11 de julio de 2013.

55. Al momento de terminar su relación contractual con Caribbean, Safreed había recibido por adelantado los pagos correspondientes a la prestación de sus servicios bajo el contrato para el período de 12 de julio al 31 de diciembre de 2013. En consideración, Safreed adeuda a Caribbean, por concepto de los referidos adelantos, la suma de $28,000.00. Dicha deuda es líquida y exigible.

56. Igualmente, en la medida en que durante los meses de julio a diciembre de 2012, y de enero a julio de 2013, Safreed no rindió a Caribbean el producto de los trabajos por los que fue contratado, Safreed cobró indebidamente por servicios no prestados a Caribbean la suma de $62,000.00.

POR TODO LO CUAL, respetuosamente se solicita que este Honorable Tribunal, emita un interdicto provisional conforme a lo establecido por la Ley 80, ordenando a Safreed a cesar y desistir inmediatamente, bajo apercibimiento de desacato, de utilizar y divulgar los Secretos Comerciales y ordenando a Safreed a remitir inmediatamente a Caribbean o a InSite Wireless toda la información y los documentos en su poder relacionados a los Secretos Comerciales, incluyendo, pero sin limitarse a: (1) estudio de terreno identificando propiedades para la construcción de torres de telecomunicaciones permanentes en las Áreas de Búsqueda; (2) número de identificación de dichos terrenos y nombres e información de contacto de los dueños de dichos terrenos o los representantes (incluyendo direcciones, teléfonos y correos electrónicos); y (3) todo correo electrónico, carta y cualquier correspondencia intercambiada con los dueños de dichos terrenos o sus representantes en los últimos seis (6) meses, al igual que anotaciones o resúmenes de

las conversaciones telefónicas que sostuvo con los dueños de dichos terrenos o sus representantes en los últimos seis (6) meses. Dicha orden provisional debe mantenerse vigente, hasta la celebración de una vista de *injunction* preliminar dentro de los diez (10) días contados a partir de la fecha en que se expida la orden de interdicto provisional. Se solicita respetuosamente, además, que se emita un *injunction* permanente ordenándole a Safreed a abstenerse permanentemente de: (a) contactar a cualquier persona que haya sido identificada como arrendatario potencial de terrenos para la ubicación de torres de telecomunicaciones dentro de las Áreas de Búsqueda; (b) contactar a cualquier "lead" (entiéndase, persona con información sobre un potencial arrendatario) que haya obtenido Safreed durante su relación contractual con Caribbean respecto al alquiler de propiedades en las Áreas de Búsqueda; y/o (c) utilizar o divulgar los Secretos Comerciales. Finalmente, se solicita respetuosamente que este Honorable Tribunal conceda una indemnización por los daños sufridos por la parte demandante hasta el presente, en una cantidad no menor de $200,000.00, una compensación adicional por los daños futuros los cuales son imposibles de calcular en este momento, por aquellos derivados de las violaciones de Safreed y Blue Wave a su deber de lealtad como agente de Caribbean, los cuales razonablemente se stima que sobrepasan $1,200,000.00, y por el dinero adeudado por el demandado a la demandante por adelantos y compensación no justificada, así como cualquier otro remedio que proceda en derecho.

RESPETUOSAMENTE SOMETIDA.

**VERIFICACIÓN**

Yo, John Campbell, Presidente de Caribbean Tower Sites, LLC, mayor de edad, casado, y residente de Hailey, ID, bajo juramento declaro:

1. Mi nombre y circunstancias personales son las anteriormente indicadas.

2. He revisado las alegaciones que anteceden tal y como fueron redactadas por los abogados de Caribbean según mis instrucciones y a mi mejor saber y entender son precisas y están correctas.

En San Juan, Puerto Rico, hoy día 18 de noviembre de 2013.

(firmado)
JOHN CAMPBELL

Afidávit Núm. 555

Jurado y suscrito ante mí por John Campbell, de las circunstancias personales antes mencionadas, identificado por el Lcdo. Miguel J. Rodríguez Marxuach, quien lo conoce personalmente, hoy día 18 de noviembre de 2013.

(firmado)

NOTARIO PÚBLICO

En San Juan, Puerto Rico a 18 de noviembre de 2013.

CERTIFICO que en esta misma fecha envié copia fiel y exacta de este escrito a la Lcda. Carmen Muñoz Noya, por correo regular, PO Box 364428, San Juan, PR 00936-4428.

**RODRÍGUEZ MARXUACH, P.S.C.**
P.O. Box 16636
San Juan, Puerto Rico 00908-6636
Tel. (787) 754-9898]
Fax. (787) 754-9897

MIGUEL J. RODRÍGUEZ MARXUACH
Colegiado Núm. 10752

MONICA ECHEVARRIA
Colegiada Núm. 17304

RUBÉN COLON MORALES
Colegiado Núm. 11210