01

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE CAROLINA

INSITE WIRELESS GROUP, LLC

CASO NUM: F PE2013-0583
SALON: 0402

DEMANDANTE
VS.
SAFREED, BRIAN

PROCEDIMIENTOS ESPECIALES
INJUNCTION - CLASICO
CAUSAL/DELITO

DEMANDADO

LIC. MUÑOZ NOYA CARMEN I
PO BOX 364428
SAN JUAN, PR 00936-4428

N O T I F I C A C I O N

CERTIFICO QUE EN RELACION CON REPLICA -------------------------- EL DIA
30 DE DICIEMBRE DE 2013 EL TRIBUNAL DICTO LA ORDEN -------------------- QUE SE
TRANSCRIBE A CONTINUACION:

EVALUADAS LAS MOCIONES PENDIENTES, SE PERMITE LA ENMIENDA A LA DEMANDA.

FDO. LAURACELIS M. ROQUES ARROYO
JUEZ

CERTIFICO ADEMAS QUE EN EL DIA DE HOY ENVIE POR CORREO COPIA DE ESTA NOTIFICACION A LAS SIGUIENTES PERSONAS A SUS DIRECCIONES INDICADAS, HABIENDO EN ESTA MISMA FECHA ARCHIVADO EN LOS AUTOS COPIA DE ESTA NOTIFICACION.

RODRIGUEZ MARXUACH MIGUEL J
PO BOX 16636
SAN JUAN, PR 00908-6636

CAROLINA, PUERTO RICO, A 10 DE ENERO DE 2014

MIRIAM ROSA MALDONADO
----------------------------------
SECRETARIO
POR: SOLMARIE MONTERO CASTRO
----------------------------------
SECRETARIO AUXILIAR

O.A.T.750-NOTIFICACION DE RESOLUCIONES Y ORDENES
WWW.RAMAJUDICIAL.PR/TELETRIBUNALES(787)759-1888/ISLA 1-877-759-1888 LIBRE DE COSTO

PAG. 01

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE CAROLINA

INSITE WIRELESS GROUP, LLC
------------------------------------------
        DEMANDANTE
          VS.
SAFREED, BRIAN
------------------------------------------
        DEMANDADO

CASO NUM:  F PE2013-0583
SALON: 0402

PROCEDIMIENTOS ESPECIALES
INJUNCTION - CLASICO
CAUSAL/DELITO

LIC. MUÑOZ NOYA CARMEN I
PO BOX 364428
SAN JUAN, PR 00936-4428

N O T I F I C A C I O N

    CERTIFICO QUE EN RELACION CON CASO DE EPIGRAFE ------------------ EL DIA 30 DE DICIEMBRE DE 2013   EL TRIBUNAL DICTO LA RESOLUCION ----------- QUE SE ACOMPAÑA  A CONTINUACION:

                                FDO.   LAURACELIS M. ROQUES ARROYO
                                              JUEZ

    CERTIFICO ADEMAS QUE EN EL DIA DE HOY  ENVIE POR CORREO  COPIA DE ESTA NOTIFICACION A LAS SIGUIENTES PERSONAS A SUS DIRECCIONES INDICADAS, HABIENDO EN ESTA MISMA FECHA ARCHIVADO EN LOS AUTOS COPIA DE ESTA NOTIFICACION.

RODRIGUEZ MARXUACH MIGUEL J
PO BOX 16636
SAN JUAN, PR 00908-6636

CAROLINA, PUERTO RICO, A 10 DE ENERO DE 2014

                      MIRIAM ROSA MALDONADO
                      ---------------------------------
                                SECRETARIO
          POR: SOLMARIE MONTERO CASTRO
                    ---------------------------------
                            SECRETARIO AUXILIAR

O.A.T.750-NOTIFICACION DE RESOLUCIONES Y ORDENES
WWW.RAMAJUDICIAL.PR/TELETRIBUNALES(787)759-1888/ISLA 1-877-759-1888 LIBRE DE COSTO

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE CAROLINA

| | |
|---|---|
| **INSITE WIRELESS GROUP, LLC.** **CARIBBEAN TOWER SITES, LLC.,** | CIVIL NÚM.: F PE2013-0583 SALA: 402 |
| Demandantes | SOBRE: |
| v. | APROPIACIÓN INDEBIDA DE SECRETOS COMERCIALES; |
| **BRIAN SAFREED** | INTERDICTO PRELIMINAR Y PERMANENTE; DAÑOS Y |
| Demandado | PERJUICIOS. |

## RESOLUCIÓN

Examinada la solicitud de Insite Wireless Group LLC ("InSite Wireless") y Caribbean Tower Sites LLC ("Caribbean") (colectivamente o ambas compañías "la parte demandante") para que se emita un *injunction* preliminar al amparo de la Ley Núm. 80 de 3 de junio de 2011, 10 L.P.R.A. Secciones 4131, *et seq.*, así como las alegaciones y otros escritos presentados por las partes, el Tribunal concede el remedio solicitado por la parte demandante y por este medio emite una orden de *injunction* preliminar ordenando al demandado, Brian Safreed ("Safreed"), a cesar y desistir inmediatamente, bajo apercibimiento de desacato, de utilizar y divulgar los Secretos Comerciales (según dicho término es definido más adelante en esta Resolución y en la Demanda Jurada presentada en este caso) y se ordena a Safreed a remitir inmediatamente a los abogados de las demandantes, todo documento en su poder que contenga dichos Secretos Comerciales incluyendo, sin limitación, la información de contacto de los dueños o representantes de terrenos (incluyendo direcciones, teléfonos y correos electrónicos de estos o sus representantes) que fueron efectivamente identificados y contactados por Safreed mientras éste trabajó para Caribbean Towers Sites, LLC ("Caribbean").

### I. TRASFONDO PROCESAL

El 9 de agosto de 2013, InSite Wireless y Caribbean presentaron una *Demanda Jurada* ante este Tribunal, Sala Superior de San Juan, solicitando un interdicto provisional, *injunction* preliminar e *injunction* permanente al amparo de la Ley núm. 80 de 3 de junio de 2011, 10 L.P.R.A. Secciones 4131, et seq., ("Ley 80"), (en adelante la

"Demanda"). En la *Demanda Jurada*, las compañías demandantes alegaron que Safreed se apropió ilegalmente de información de negocios confidencial y sensitiva que fue desarrollada y/o recopilada por éste mientras trabajaba para Caribbean y proveía servicios de localización de terrenos para el arrendamiento y la eventual construcción e instalación de torres de telecomunicaciones en las Islas Vírgenes de los Estados Unidos de América (las "USVI"), labor que realizó para Caribbean a tenor con acuerdos alcanzados en Puerto Rico. Las demandantes mantienen que la referida información constituye un secreto comercial protegido por la Ley 80 y que, además, Safreed divulgó y utilizó y continúa divulgando y utilizando, dichos secretos comerciales proveyendo una ventaja indebida a los competidores de las demandantes en el mercado y afectando los intereses de las mismas.

Examinada la *Demanda Jurada*, el 12 de agosto de 2013, el Tribunal de San Juan emitió Orden y Resolución *ex parte*, mediante la cual concedió la solicitud de entredicho provisional de las demandantes. Además y conforme a lo dispuesto por el Artículo 7 de la Ley 80, el Tribunal señaló una vista, a celebrarse el 22 de agosto de 2013, para dilucidar la procedencia del *Injunction* preliminar. Antes de celebrarse dicha vista y luego de ser notificado de la misma, Safreed compareció ante el Tribunal mediante dos mociones de desestimación, una alegando falta de jurisdicción al amparo de la Regla 3.4 de las de Procedimiento Civil y la otra reclamando que la Demanda dejaba de exponer una reclamación que justificara la concesión de un remedio al amparo de la Ley 80. La parte demandante presentó su respectiva oposición a las solicitudes de desestimación de la parte demandada, argumentando, en esencia, que la Regla 3 de las de Procedimiento Civil trata el tema de la competencia del Tribunal y no el de la jurisdicción y que la información que las demandantes buscan proteger en este caso es precisamente el tipo de información que la Ley 80 busca proteger de uso y divulgación indebida.

Llegado el 22 de agosto de 2013, las demandantes comparecieron a la vista por conducto de sus abogados. Además, estuvo presente en dicha ocasión el Presidente de Caribbean, el Sr. John Campbell. El demandado no compareció personalmente a la

vista, pero estuvo representado por sus abogadas. Luego de escuchar las respectivas argumentaciones de las partes, el Tribunal dejó sin efecto la orden de entredicho provisional *ex parte*, declaró sin lugar las mociones de desestimación de Safreed, y ordenó el traslado del caso a esta Sala de Carolina, por entender que esta Región Judicial tiene competencia para atender el caso, puesto que Safreed reside en el Municipio de Carolina.

Con posterioridad al traslado, el 20 de septiembre de 2013, las demandantes presentaron una solicitud urgente para que se celebrara una vista de *Injunction* preliminar en donde las partes tuvieran la oportunidad de presentar prueba con respecto a la procedencia de tal solicitud. Poco después, este Tribunal señaló una vista para dilucidar la procedencia del *injunction* preliminar solicitado, la cual, luego de una posposición por acuerdo de las partes, se celebró el 18 de noviembre de 2013 (en adelante la "Vista"). A la vista compareció la parte demandante por conducto de sus abogados y el Presidente de Caribbean, John Campbell. Safreed compareció personalmente y acompañado por sus abogadas. Comenzada la Vista, las demandantes presentaron bajo juramento el testimonio del señor Campbell.

El señor Campbell comenzó su testimonio afirmando que Safreed fue contratado por Caribbean con el propósito de identificar potenciales arrendadores y terrenos para ubicar torres de telecomunicaciones que satisficieran las necesidades de compañías de servicio inalámbrico, incluyendo las "áreas de búsqueda" o "search rings" de AT&T denominadas por dicha compañía como "Mary's Fancy" y "Work and Rest" en las USVI. El señor Campbell testificó, además, que de acuerdo con dicha encomienda y como representante de Caribbean, Safreed utilizó alguna información públicamente accesible, así como información provista por compañías de telecomunicaciones, para efectivamente identificar y crear listas de "candidatos" o potenciales arrendadores de terrenos para la construcción de las torres. Estas listas fueron luego depuradas hasta contar con la información específica de dueños de propiedades idóneas que efectivamente estuviesen dispuestos a arrendarlas, proceso el cual requirió la inversión de significativos esfuerzos y tiempo. Además, el señor Campbell testificó que Safreed

3

también asistió en la negociación de los contratos temporeros para las áreas de búsqueda de "Mary's Fancy" y "Work and Rest" y eventualmente firmó los contratos de arrendamiento de los terrenos identificados como Director de Operaciones de Caribbean. También testificó que Safreed fue remunerado por estos servicios por Caribbean. Más específicamente, el señor Campbell testificó que Safreed recibió $60,000.00 como compensación básica y $500.00 mensuales para gastos durante los años 2012 y 2013.

El señor Campbell también explicó que la información resultante de los trabajos efectuados por Safreed durante su empleo con Caribbean, incluyendo las listas de arrendadores potenciales y los detalles sobre las negociaciones de los acuerdos de arrendamiento, era considerada como "sensitiva" ("sensitive[1]") por la compañía y daba una ventaja competitiva a Caribbean sobre sus competidores. Además, el señor Campbell testificó que Safreed sabía que la información recopilada por la compañía sobre la identidad de arrendadores potenciales de terrenos y posibles ubicaciones para la eventual construcción de las torres de telecomunicaciones, era "sensitiva" y confidencial, por lo que así él lo discutió con Safreed mientras éste trabajaba para Caribbean.

Por otro lado, durante el testimonio del señor Campbell la parte demandante presentó como Exhibit #1, una cadena de correos electrónicos intercambiada entre el señor Campbell y Safreed en junio de 2008, en el cual según éste se discutían en detalle las tareas inherentes a los trabajos que Safreed hacía para Caribbean, se detallaron los pormenores de sus funciones, la remuneración acordada y las proyecciones y/o metas de la compañía a corto y largo plazo. Dichos correos, además, discutían la expectativa y la exigencia de Caribbean de que Safreed sólo ofreciese servicios de identificación de terrenos potenciales para la construcción y desarrollo de torres de telecomunicaciones para Caribbean, excluyendo a cualquier otra compañía o entidad en Puerto Rico o las USVI. Campbell testificó que dichos correos contenían los acuerdos llegados con Safreed sobre sus términos y condiciones de trabajo. Además, Campbell testificó que

---

[1] Las partes estipularon que tanto el señor Campbell como el señor Safreed testificarían en el idioma inglés.

4

las reuniones y los acuerdos para la contratación de Safreed por Caribbean ocurrieron en Puerto Rico, lugar de donde Safreed también es residente.

El señor Campbell continuó testificando que Safreed terminó unilateralmente su relación con Caribbean y poco después se le cursó un correo electrónico, presentado como Exhibit 7 de la parte demandante, mediante el cual se le solicitó toda la información sensitiva que fue desarrollada por él durante su empleo con Caribbean, incluyendo, sin limitación, las listas de los arrendadores de terrenos y su información de contacto, el status de los proyectos en desarrollo y las solicitudes de permisos pendientes, entre otra información propiedad de Caribbean. Según el señor Campbell, Safreed se negó a proveer la información solicitada, situación que causó grandes inconvenientes, costos y pérdidas a Caribbean. Finalmente, el señor Campbell testificó que hace poco advino en conocimiento de que la información que fue recopilada por Safreed durante su empleo con Caribbean y mientras era remunerado por ésta, fue utilizada por Safreed para beneficio de TowerCo, una compañía que también se dedica a localizar y proveer espacio en torres de telecomunicaciones y otra infraestructura, a compañías de telecomunicaciones y es un competidor directo de las demandantes. Particularmente, con respecto al área de búsqueda "Mary's Fancy," el señor Campbell testificó que, debido a que Safreed utilizó los conocimientos y la información confidencial propiedad de Caribbean para intentar negociar un nuevo contrato con los dueños del terreno ubicado en esta área de búsqueda para beneficio de TowerCo, Caribbean se vio obligado a re-negociar el contrato de arrendamiento para la ubicación de la torre permanente, lo que resultó en un aumento en la renta a pagar por Caribbean y una consecuente devaluación de los activos de la compañía. En cuanto al área de búsqueda denominada como "Work and Rest", el señor Campbell testificó que Safreed exitosamente negoció un contrato para la ubicación de una torre de telecomunicaciones permanente en dicha área de búsqueda en representación de TowerCo, por lo que Caribbean en efecto perdió su contrato y la inversión y esfuerzos invertidos para localizar el terreno en el primer lugar. En otras palabras, la compañía perdió el contrato que previamente Safreed había negociado a su favor, con la consecuente pérdida de

5

ingresos futuros. También quedó establecido que Caribbean tomó medidas para proteger la confidencialidad de la información de negocios que se generaba, ya que si la misma se hacía pública o llegaba a manos de terceros perdería su valor y se desvanecería la ventaja competitiva que brindaba a Caribbean sobre otras entidades en el mismo negocio. Entre otras medidas, Campbell requirió a Safreed que este último no brindaría iguales servicios a compañías que competiesen con Caribbean y que tendría que manejar la información propietaria recopilada de forma confidencial.

En el turno para la presentación de prueba de la parte demandada, se presentó el testimonio bajo juramento de Brian Safreed. El testimonio directo de Safreed mayormente versó sobre cómo el mismo decidió dejar de laborar para Caribbean porque vio una buena oportunidad de "tomar otro rumbo" y el hecho de que, mientras trabajó con Caribbean, utilizó fuentes públicas y accesibles por medios de conocimiento general tales como el Internet, para ejercer sus funciones e identificar posibles "candidatos" para arrendar terrenos para instalar torres de telecomunicaciones. Safreed, sin embargo, no hizo manifestación alguna en torno a si la información que éste desarrolló y/o recopiló mientras trabajó con Caribbean era o no confidencial o si la misma confería o no una ventaja económica a ésta sobre sus competidores. Safreed tampoco opinó sobre los correos electrónicos presentados por la parte demandante relativos a los acuerdos entre las partes y que establecían la naturaleza confidencial de la información a ser recopilada y la prohibición contractual a Safreed de prestar los mismos servicios a otras compañías mientras trabajara para Caribbean. En ese sentido, el testimonio del señor Campbell a los efectos de que se había llegado a acuerdos sobre tales asuntos permaneció irrefutado.

En contrainterrogatorio, Safreed aceptó que la información recopilada por él sobre los diferentes "candidatos" para arrendamiento y la instalación de torres de telecomunicaciones se trataba como información propietaria y confidencial. Esto también fue corroborado por el Exhibit A de la parte demandada, el cual, según Safreed explicó, es una forma de Caribbean para incluir información de "candidatos" para arrendamiento y estaba claramente marcada como "Propietaria y Confidencial".

6

Safreed además admitió recibir $60,000 anuales en compensación, la cual alegó que era para gastos, a pesar de reconocer que recibía de forma adicional otros $500 en reembolso de gastos. Igualmente, Safreed admitió que al romper su relación contractual con Caribbean, Campbell le solicitó que entregara la información recopilada por él durante el período en que aún le prestaba servicios y recibió pagos de la compañía, pero no entregó la misma porque no quiso. Safreed admitió, además, que no sólo no entregó la información que le solicitó Caribbean mediante el Exhibit 7 de las demandantes, incluyendo las listas de terrenos y arrendadores potenciales y sus informaciones de contacto, sino que antes de su partida destruyó o borró de los sistemas de Caribbean los correos electrónicos y otros records con información relacionada y que fue recopilada durante su relación con Caribbean. Safreed también admitió durante la Vista que, aun cuando no tiene en su poder una lista de arrendadores potenciales de terrenos para el desarrollo de las torres de telecomunicaciones, dicha lista puede ser creada por él. El resto del testimonio de Safreed versó sobre las razones que motivaron su partida de Caribbean.

## II. DETERMINACIONES DE HECHOS

1. InSite Wireless se dedica al negocio de adquirir, operar y administrar torres de telecomunicaciones para co-ubicación a través de todos los Estados Unidos, Puerto Rico y las USVI.

2. Caribbean, se dedica, entre otras cosas, a identificar posibles terrenos para la instalación y construcción de torres de telecomunicaciones y a la negociación de contratos de arrendamiento para la instalación y construcción de dichas torres.

3. Como parte de sus negocios, Caribbean identifica y cualifica potenciales arrendadores y terrenos para la construcción de torres de telecomunicaciones, dentro de "áreas de búsqueda" o "search rings" que son provistas por distintas compañías de telecomunicaciones interesadas en mejorar o expandir su área de cobertura.

4. Muchas de las fuentes utilizadas por Caribbean para identificar "candidatos" para arrendamiento de terrenos y eventual instalación de torres son públicas, pero la información que identifica dichos "candidatos", es decir los dueños de

propiedades idóneas que efectivamente están dispuestos a arrendarlas para la instalación de torres y cómo contactarlos, requería la inversión de significativos esfuerzos y tiempo, por lo que es considerada como confidencial por Caribbean, y le confiere una ventaja competitiva a la compañía.

5. Allá para 2007-2008, Caribbean contrató a Safreed como Director de Operaciones de la compañía. Entre las funciones que le fueron encomendadas, Safreed tenía que identificar arrendadores potenciales de terrenos para el desarrollo de torres de telecomunicaciones que satisficieran las necesidades de varias compañías, incluyendo AT&T, incluyendo las áreas de búsqueda identificadas por AT&T cómo Mary's Fancy y Work and Rest, ubicadas en las USVI. Esa contratación tuvo lugar en Puerto Rico, donde residía Safreed.

6. Para identificar los potenciales arrendadores de terrenos para el desarrollo de las torres de telecomunicaciones, Safreed utilizó varios portales de internet e información específicamente provista por las compañías de telecomunicaciones interesadas en mejorar o expandir su área de cobertura.

7. Durante el tiempo que Safreed trabajó con Caribbean, Safreed fue remunerado por la compañía por sus servicios los que incluían identificar potenciales arrendadores y terrenos para la construcción y ubicación de torres de telecomunicaciones en las USVI.

8. La información recopilada por Safreed para Caribbean sobre potenciales arrendadores y terrenos para la instalación de torres es de suma importancia para la compañía, es altamente sensitiva y requirió trabajo, esfuerzo e inversiones considerables por parte de Caribbean.

9. En junio de 2008, y al comienzo de su relación con Caribbean, Safreed y el señor Campbell intercambiaron correos electrónicos, marcados como Exhibits de la parte demandante, en los cuales, entre otras cosas, se discutió la implantación de un acuerdo de no competencia como política de la compañía y la necesidad de que Safreed sólo ofrecería servicios de identificación de terrenos para Campbell y sus compañías,

8

incluyendo Caribbean, excluyendo a cualquier otra compañía o entidad en Puerto Rico o las USVI.

10. Además, el testimonio del señor Campbell a los efectos de que dichos correos reflejan los términos y condiciones de trabajo acordados con Safreed no fue refutado. En su consecuencia, quedó establecido que Caribbean tomó medidas para proteger la confidencialidad de la información de negocios que se generaba, ya que si la misma se hacía pública o llevaba a las manos de terceros ésta perdería su valor económico y se desvanecería la ventaja competitiva que ésta brindaba a Caribbean sobre otras entidades en el mismo negocio.

11. Poco después de que Safreed terminara su relación con Caribbean y mediante el Exhibit 7 de las demandantes, el señor Campbell le solicitó a Safreed que entregara cierta información sensitiva y confidencial referente a los secretos comerciales de Caribbean que éste tenía en su poder, incluyendo las listas depuradas de arrendadores potenciales de propiedades idóneas, su información de contacto, el status de los proyectos en desarrollo y las solicitudes de permisos pendientes, entre otra información que fue desarrollada y/o recopilada por Safreed durante su trabajo con Caribbean.

12. Safreed se negó a proveer dicha información a Caribbean porque no quiso y al día de hoy la misma no ha sido provista por el demandado a las demandantes.

13. Antes de su partida, Safreed admitió que destruyó información que obtuvo y/o recopiló mientras trabajó para Caribbean, incluyendo varios correos electrónicos relacionados a la identificación y negociación con arrendadores potenciales.

### III. CONCLUSIONES DE DERECHO

El recurso de *injunction* está reglamentado por la Regla 57 de las de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 57, y por los Artículos 675 al 687 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 3521 al 3533, respectivamente. En términos generales, su propósito es prohibir u ordenar la ejecución de algún acto determinado con el fin de evitar causar perjuicios inminentes o daños irreparables a alguna persona.

9

Siendo un recurso extraordinario, un *injunction* sólo puede "utilizarse cuando el procedimiento ordinario no provea un remedio rápido, adecuado, y eficaz, para la corrección de un agravio de patente intensidad al derecho del individuo que reclame urgente reparación." Otero Martínez v. Gobernador, 106 D.P.R. 552, 556 (1977).

Específicamente, un *injunction* preliminar es el remedio que se emite en cualquier momento antes del juicio en su fondo, luego de haberse celebrado una vista en la que se discutan los méritos de tal solicitud. Véase, D. Rivé Rivera, Recursos Extraordinarios, 2da ed. Revisada, Programa de Educación Jurídica Continuada, Facultad de Derecho Universidad Interamericana de Puerto Rico, 1996, San Juan, P.R., pág. 21. El propósito fundamental del *injunction* preliminar, dentro del contexto de una petición de *injunction* permanente, es mantener el *status quo* hasta que se celebre el juicio en sus méritos, para que así no se produzca una situación que convierta en académica la sentencia que finalmente se dicte o se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. Véase, Mun. de Ponce v. Gobernador, 136 D.P.R. 776, 784 (1994); Rullán v. Fas Alzamora, 166 D.P.R. 742 (2006); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656 (1997). Nuestro Tribunal Supremo ha establecido los criterios que se deben tomar en cuenta al decidir si se concede o no un *injunction* preliminar, estos son: (1) la naturaleza de los daños que puedan ocasionársele a las partes de concederse o denegarse el injunction; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederse el injunction; y (5) el posible impacto sobre el interés público del remedio que se solicita. Véase, Asoc. Vec. Villa Caparra v. Asoc. Fom. Educativo, 173 D.P.R. 304 (2008); Mun. de Ponce v. Gobernador, 136 D.P.R. 776 (1994); Puerto Rico Telephone Co. v. Tribunal Superior, 103 D.P.R. 200 (1975).

Por otro lado, la Ley 80 confiere protección a aquella información confidencial que tiene un valor comercial o industrial y que su dueño protege razonablemente para evitar su divulgación. Esta información es definida por la Ley 80 como un "secreto comercial" o "industrial". En su Exposición de Motivos, la Ley 80 define un secreto

10

comercial como "un proceso para manufacturar, tratar o preservar materiales, una fórmula o receta, un proyecto o patrón para el desarrollo de alguna maquinaria, **o bien, simplemente una lista de clientes especializados y constitutivos de un mercado determinado que confieran alguna ventaja a su dueño sobre sus competidores**". Énfasis suplido. De tal secreto comercial se deriva un valor económico independiente, por lo que la Ley 80 requiere que los propietarios de la información que se pretende proteger hayan tomado aquellas "medidas razonables de seguridad, según las circunstancias, para mantener su confidencialidad." Artículo 4 de la Ley 80, 10 L.P.R.A. Sección 4132.

La Ley 80 reconoce la necesidad de otorgar protección a los secretos comerciales, pues "la no protección de los mismos podría dejar a las compañías a merced de cualquier competidor o ex empleado que adquiriese conocimiento del mismo, ya sea directamente por el dueño o por otros medios". Exposición de Motivos Ley 80. En su consecuencia, además de un remedio en daños y perjuicios contra la persona natural o jurídica que se apropie indebidamente de un secreto comercial, la Ley 80 establece una causa de acción especial de *injunction* preliminar, para garantizar que no se divulgue a terceros en el futuro la información que constituye un secreto comercial protegido. Véase, Artículos 6 y 8 de la Ley 80, respectivamente, 10 L.P.R.A. Secciones 4134 y 4136. El *injunction* preliminar especial provisto por la Ley 80, sin embargo, no requiere evidencia particular del daño irreparable. A estos efectos, el Artículo 8 de la Ley 80 establece, en su parte pertinente, lo siguiente:

> En todo caso en que quede evidenciada la existencia de una apropiación indebida de un secreto comercial o industrial, el tribunal podrá expedir una orden de interdicto preliminar **sin que el demandante tenga que evidenciar que ello constituye un daño irreparable.** Véase, Artículo 8 de la Ley 80, 10 L.P.R.A. Sección 4136. (Énfasis suplido).

Pero el que una parte no tenga que establecer la existencia de un daño irreparable, no la exime de demostrar que tiene una probabilidad razonable de prevalecer en su caso. Es decir, la parte promovente tiene que demostrar que eventualmente podrá establecer lo siguiente: (1) que la información que se pretende proteger se considera un secreto comercial, conforme a la definición provista por la Ley 80, de la cual se deriva un valor

11

económico; y (2) que dicha información fue objeto de medidas razonables de seguridad, según las circunstancias, para mantener su confidencialidad. Finalmente, la ley 80 también concede potestad al Tribunal para emitir un interdicto permanente una vez concluido el caso en su fondo.

### III. DISCUSIÓN

Luego de examinar la prueba recibida en la Vista, particularmente los testimonios vertidos por el señor Campbell y por el propio demandado, encontramos que la misma sostiene la solicitud de las demandantes para que se emita un *injunction* preliminar protegiendo la confidencialidad de la información que fue recopilada por Safreed mientras trabajaba para Caribbean y era remunerado por ésta, sobre potenciales arrendadores y terrenos para la construcción de torres de telecomunicaciones.

En primer lugar, este Tribunal concluye que durante la Vista quedó evidenciado que la información que las demandantes solicitan sea protegida en efecto constituye un secreto comercial, conforme dicho término es definido por la Ley 80. Desarrollar y/o recopilar la referida información requirió que Caribbean contratara los servicios de Safreed para que éste precisamente identificara a los potenciales arrendadores de los terrenos donde podían ubicarse torres de telecomunicaciones dentro de las diferentes áreas de búsqueda. **Además, a pesar de que algunas de las herramientas o medios utilizados por Safreed para recopilar la información estuviesen disponibles al público en general a través del Internet o de portales electrónicos de búsqueda, la información *generada y/o recopilada por Safreed como producto de dicha investigación* le confiere y confería una ventaja significativa a Caribbean sobre su competencia. De hecho, quedó demostrado que la lista de arrendadores potenciales dispuestos a contratar con Caribbean para la construcción de las torres de telecomunicaciones en terrenos localizados dentro de las diferentes áreas de búsqueda identificadas por las compañías de telecomunicaciones, no está disponible al público en general.** Este Tribunal concluye, por lo tanto, que la información que la parte demandante solicita sea protegida en efecto constituye un secreto de negocio conforme a la definición provista por la Ley 80.

12

En segundo lugar, este Tribunal concluye que las demandantes lograron establecer su cumplimiento con el segundo requisito de la Ley 80 - haber tomado medidas cautelares o de seguridad para la protección de sus secretos comerciales. Del testimonio del señor Campbell se desprende que éste discutió en varias ocasiones con los empleados o contratistas de Caribbean, incluyendo a Safreed, el carácter "sensitivo" y confidencial de la información. Más aún, la parte demandante presentó en evidencia en la Vista varios exhibits que incluyen una cadena de correos electrónicos de la cual se desprende claramente que al menos se discutió un entendimiento de no competencia entre Caribbean y Safreed desde tan temprano como junio de 2008. Estos correos electrónicos y el testimonio del señor Campbell evidencian que Safreed conocía que la información fue recopilada "bajo circunstancias que dan lugar a un deber de mantener su confidencialidad o limitar su uso" (Artículo 6 de la Ley 80, 10 L.P.R.A 4134), que Caribbean quiso "establecer medidas de control para el uso o acceso de la información por parte de los empleados" de la compañía (Artículo 3 de la Ley 80, 10 L.P.R.A 4133) y que la compañía tomó "las medidas razonables de seguridad" para "limitar el acceso a la información bajo circunstancias particulares" para mantener la confidencialidad de sus secretos comerciales (Artículo 4 de la Ley 80, 10 L.P.R.A 4132). Además, la propia parte demandada presentó como Exhibit A en la Vista un documento que incluía información relacionada a uno de los arrendadores potenciales en un área de búsqueda y el mismo estaba claramente marcado como "Propietario y Confidencial." Esto demuestra otra medida de precaución tomada por Caribbean para proteger su información propietaria.

Finalmente, hacemos constar que este Tribunal tomó en consideración el comportamiento o "demeanor" de Safreed durante la Vista al aquilatar la prueba y si conceder o no el remedio solicitado. Particularmente, dimos peso a las expresiones de Safreed a los efectos de que éste no produjo a Caribbean la información generada y recopilada mientras trabajó para la compañía simplemente porque no quiso. Más aún, tomamos en consideración las admisiones del demandado de que al menos parte de la información solicitada por Caribbean a Safreed mediante el Exhibit 7 fue destruida por

13

éste al momento de su partida. Estas expresiones y admisiones restan credibilidad al argumento del demandado de que la información recopilada por él durante su empleo con Caribbean no era información sensitiva y confidencial de la empresa y podía ser obtenida fácilmente por medios disponibles al público en general. Además, la actitud y actuaciones del demandado tienden a demostrar menosprecio por los intereses de Caribbean y que éste ni tan siquiera tomó en consideración el daño que sus actuaciones podían causarle a dicha empresa. El testimonio de Safreed, en esencia, demostró que a éste le tiene sin cuidado si dicha compañía sufre o no daños como resultado de su conducta y, por ende, no tiene reparo alguno en utilizar la información propietaria y confidencial de la compañía para su beneficio personal.

## IV. RESOLUCIÓN Y ORDEN

Conforme a lo anterior, este Tribunal emite una Orden de *Injunction* Preliminar, conforme a las disposiciones del Artículo 8 de la Ley 80 y ordena al demandado, Brian Safreed, a cesar y desistir inmediatamente, bajo apercibimiento de desacato, de utilizar y divulgar la información desarrollada y/o recopilada por él sobre potenciales arrendadores y terrenos para la instalación de torres de telecomunicaciones en las USVI mientras trabajaba para Caribbean (los "Secretos Comerciales") incluyendo, pero sin limitarse, a no contactar ni comunicarse con ningún potencial arrendador de terreno identificado por él en las áreas de búsqueda en las que trabajó para Caribbean.

Se ordena a Safreed, además, a remitir a la parte demandante, dentro de los próximos cinco (5) días de la notificación de la presente Orden, toda la información y los documentos en su poder relacionados a los Secretos Comerciales, incluyendo, pero sin limitarse a: (1) estudios de terreno identificando propiedades para la construcción de torres de telecomunicaciones permanentes en las áreas de búsqueda en las cuales trabajó para Caribbean; (2) número de identificación de dichos terrenos y nombres e información de contacto de los dueños de dichos terrenos o los representantes (incluyendo direcciones, teléfonos y correos electrónicos); y (3) todo correo electrónico, carta y cualquier correspondencia intercambiada con los dueños de dichos terrenos o sus representantes en el último año, al igual que anotaciones o resúmenes de las

14

conversaciones telefónicas que sostuvo con los dueños de dichos terrenos o sus representantes en el último año. Dicha información deberá remitirse a la representación legal de la parte demandante.

En cuanto a la *Enmienda y Ratificación de Moción de Desestimación* se declara NO HA LUGAR.

NOTIFIQUESE.

En Carolina, Puerto Rico a 30 de diciembre de 2013.

*LAURACELIS ROQUES ARROYO*
*JUEZ SUPERIOR*

CERTIFICO:

POR: MIRIAM ROSA MALDONADO
SECRETARIA REGIONAL

SOLMARIE MONTERO CASTRO
SECRETARIA AUXILIAR DEL TRIBUNAL

JAN 1 0 2014

15

PAG. 01                    ESTADO LIBRE ASOCIADO DE PUERTO RICO
                              TRIBUNAL DE PRIMERA INSTANCIA
                                     SALA DE CAROLINA

INSITE WIRELESS GROUP, LLC
-----------------------------------------          CASO NUM:  F PE2013-0583
              DEMANDANTE                                      SALON: 0402
                  VS.
SAFREED, BRIAN                                     PROCEDIMIENTOS ESPECIALES
-----------------------------------------          INJUNCTION - CLASICO
              DEMANDADO                            CAUSAL/DELITO

LIC. MUÑOZ NOYA CARMEN I
PO BOX 364428
SAN JUAN,PR 00936-4428


                          N O T I F I C A C I O N


    CERTIFICO QUE EN RELACION CON CASO DE EPIGRAFE ------------------ EL DIA
30 DE DICIEMBRE DE 2013  EL TRIBUNAL DICTO LA RESOLUCION ------------ QUE SE
ACOMPAÑA  A CONTINUACION:


                         FDO.   LAURACELIS M. ROQUES ARROYO
                                         JUEZ

    CERTIFICO  ADEMAS QUE EN EL DIA DE HOY  ENVIE POR CORREO  COPIA DE ESTA
NOTIFICACION A LAS SIGUIENTES PERSONAS A SUS DIRECCIONES INDICADAS, HABIENDO
EN ESTA MISMA FECHA ARCHIVADO EN LOS AUTOS COPIA DE ESTA NOTIFICACION.

RODRIGUEZ MARXUACH MIGUEL J
PO BOX 16636
SAN JUAN,PR 00908-6636

CAROLINA, PUERTO RICO, A 10 DE ENERO DE 2014

                          MIRIAM ROSA MALDONADO
                          -------------------------------------
                                        SECRETARIO
                    POR: SOLMARIE MONTERO CASTRO
                          -------------------------------------
                                  SECRETARIO AUXILIAR

O.A.T.750-NOTIFICACION DE RESOLUCIONES Y ORDENES
WWW.RAMAJUDICIAL.PR/TELETRIBUNALES(787)759-1888/ISLA 1-877-759-1888 LIBRE DE COSTO