

TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
PO BOX 191067
SAN JUAN PUERTO RICO 00919-1067

# URGENTE

| HOJA DE ENVIO DE FAX | |
|---|---|
| FECHA: 25 DE abril DE 2014 | ASUNTO: RES ____ SEN ✗ |
| DE: Yisel Alvarado Aponte<br>SECRETARIA AUXILIAR DEL TRIBUNAL I | TOTAL PAGINAS, PORTADA (20) |
| NUM. DE REF: KLCE201400161    EPIGRAFE: | Insite Wireless Group LLC<br>vs<br>Brian Safreed |

| PARA: Lic. José L. Gonzalez<br>Lic. Roberto A. Fernandez | PARA: |
| FAX: 758-4152   TEL: | FAX:   TEL: |
| PARA: Lic. Miguel Rodriguez<br>Lic. Monica Echevarria | PARA: |
| FAX: 754-9897   TEL: | FAX:   TEL: |
| PARA: Lic. Carmen Muñoz | PARA: |
| FAX: 753-6580   TEL: | FAX:   TEL: |
| PARA: TPI - Carolina | PARA: |
| FAX: 776-4532   TEL: | FAX:   TEL: |
| PARA: | PARA: |
| FAX:   TEL: | FAX:   TEL: |
| PARA: | PARA: |
| FAX:   TEL: | FAX:   TEL: |
| PARA: | PARA: |
| FAX:   TEL: | FAX:   TEL: |

NOTAS Y COMENTARIOS:
_____
_____

TEL. (787) 474-3777 / EXT. 2213          FAX. (787) 753-5372

Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
REGIÓN JUDICIAL DE CAROLINA
PANEL ESPECIAL

| | | |
|---|---|---|
| INSITE WIRELESS GROUP, LLC; CARIBBEAN TOWER SITES, INC., <br><br>Recurridos<br><br>v.<br><br>BRIAN SAFREED<br><br>Peticionario | KLCE20140161 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm: FPE2013-0583 (402)<br><br>Sobre: Apropiación Indebida de Secretos Comerciales; Interdicto Provisional y Permanente; Daños y Perjuicios |

Panel integrado por su presidente el Juez Hernández Serrano, la Juez Cintrón Cintrón y el Juez Brau Ramírez.

**Hernández Serrano, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 22 de abril de 2014.

Comparece ante este tribunal intermedio el señor Brian Safreed (señor Safreed o peticionario) mediante recurso de *certiorari* y nos solicita que revoquemos la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI) el 30 de diciembre de 2013, notificada el 10 de enero de 2014. En la referida Resolución, el TPI concedió la solicitud de *injunction* preliminar de Caribbean Tower Sites, Inc. (Caribbean o recurrido) e InSite Wireless Group LLC (InSite o recurrido)[1], y ordenó al señor Safreed a cesar y desistir inmediatamente de utilizar y divulgar la información desarrollada y/o recopilada por él

---

[1] Es pertinente señalar, que el 14 de enero de 2014 el TPI emitió una Orden en la que permitió una enmienda a la demanda. En esta enmienda solamente funge como demandante Caribbean y se añade a Blue Wave Tech Corp., como demandada.

sobre potenciales arrendadores y terrenos para la instalación de torres de telecomunicaciones en las Islas Vírgenes de los Estados Unidos de América (USVI) mientras trabajaba para Caribbean. Además de lo anterior, incluye pero sin limitarse, el no contactar ni comunicarse con ningún potencial arrendador de terreno identificado por él en las áreas de búsqueda en las que trabajó para Caribbean. Así también, ordenó al señor Safreed a remitir a la parte recurrida, dentro de los próximos 5 días de la notificación de la Resolución recurrida, toda la información y documentos en su poder relacionados a los *secretos comerciales* de Caribbean.[2]

Por los fundamentos expuestos a continuación, se expide el recurso y se devuelve el caso al TPI para que se celebre una vista evidenciaria donde se determine el carácter confidencial de la información.

I.

Según surgen del expediente ante nuestra consideración, los hechos e incidentes esenciales y pertinentes para disponer del recurso son los siguientes:

InSite y Caribbean presentaron demanda solicitando un interdicto provisional, Injunction preliminar e Injunction permanente al amparo de la Ley Núm. 80 de 3 de junio de 2011, 10 L.P.R.A. 4131 *et seq.* (Ley 80). Estos alegaron que el señor Safreed se apropió ilegalmente de información de negocios confidencial y sensitiva que fue desarrollada y/o recopilada por éste mientras trabajaba para Caribbean y proveía servicios de localización de terrenos para el arrendamiento y

---
[2] Apéndice de la Petición de *Certiorari*, Resolución del TPI, págs. 140-141.

la eventual construcción e instalación de torres de telecomunicaciones en las USVI. Además, sostuvieron que la información constituía un secreto comercial protegido por la Ley 80, *supra*, y que el peticionario divulgó y utilizó y continuaba divulgando y utilizando, dichos secretos comerciales proveyendo una ventaja indebida a los competidores de los recurridos en el mercado y afectando los intereses de las mismas.

El peticionario presentó dos mociones de desestimación, en una alegó falta de jurisdicción al amparo de la Regla 3.4 de las de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 3.4, y en la otra reclamó que la demanda dejaba de exponer una reclamación que justificara la concesión de un remedio al amparo de la Ley 80, *supra*. Los recurridos presentaron su respectiva oposición a las solicitudes de desestimación en la que argumentaron que la Regla 3 de las de Procedimiento Civil, *supra*, trata el tema de la competencia del tribunal y no el de la jurisdicción y que la información que los recurridos buscan proteger en este caso es precisamente el tipo de información que la Ley 80, *supra*, busca proteger de uso y divulgación indebida.

Celebrada la vista del 22 de agosto de 2013, el TPI[3] dejó sin efecto la orden de entredicho provisional ex parte, declaró sin lugar las mociones de desestimación del peticionario, y ordenó el traslado del caso a la Sala de Carolina, por entender que dicha Región Judicial tenía competencia para atender el caso, ya que el señor Safreed reside en Carolina.[4] Con posterioridad al traslado, el 18 de noviembre de 2013 el

---

[3] Originalmente la petición de *injunction* fue presentada en el Tribunal de Primera Instancia de San Juan, sala de Recursos Extraordinarios.
[4] Apéndice de la Petición de *Certiorari*, págs. 50-53.

KLCE201400161 4

TPI celebró una vista evidenciaria de *injunction* preliminar para determinar la procedencia de dicho recurso.

Luego de la vista, el TPI concedió la solicitud de *injunction* preliminar a los recurridos, y ordenó al señor Safreed a cesar y desistir inmediatamente, bajo apercibimiento de desacato, de utilizar y divulgar la información desarrollada y/o recopilada por él sobre potenciales arrendadores y terrenos para la instalación de torres de telecomunicaciones en las USVI mientras trabajaba para Caribbean incluyendo, pero sin limitarse, a no contactar ni comunicarse con ningún potencial arrendador de terreno identificado por él en las áreas de búsqueda en las que trabajó para Caribbean. Así también, ordenó al señor Safreed a remitir a la parte recurrida, dentro de los próximos 5 días de la notificación de la Resolución recurrida, toda la información y documentos en su poder relacionados a los *secretos comerciales* de Caribbean.

Inconforme con tal determinación, el peticionario acude ante este tribunal intermedio planteándonos que el foro de instancia cometió el siguiente error:

> ERRÓ EL TPI AL NO DESESTIMAR LA DEMANDA Y EN SU LUGAR LLEVAR A CABO UNA VISTA DE INTERDICTO PROVISIONAL Y EMITIR UNA ORDEN DE INTERDICTO CONTRA SAFREED.

Particularmente el peticionario argumenta, que el TPI erró al conceder el *injunction* preliminar solicitado por Caribbean, toda vez que: (i) la información que ésta pretende proteger mediante la solicitud del mencionado recurso no constituye un secreto comercial conforme dicho término es definido por la Ley 80, (ii) los recurridos no cumplieron con demostrar que dicha información fue objeto de medidas razonables de

KLCE201400161 5

seguridad para mantener la confidencialidad, y; (iii) los tribunales en Puerto Rico carecen de jurisdicción, toda vez que los contactos dominantes están en las USVI.

Por otro lado, el 4 de abril de 2014 el peticionario presentó *Moción en Auxilio de Jurisdicción al Amparo de la Regla 79 del Reglamento de este Honorable Tribunal*. En dicha moción el peticionario sostuvo que: (i) el TPI no le impuso a la parte recurrida la fianza que requiere la Regla 57.4 de Procedimiento Civil, 32 L.P.R.A Ap. V, R. 57.4, ni ha prestado la misma, por lo cual la orden de interdicto es inoficiosa y nula; (ii) InSite Wireless Group, LLC, es la parte con la legitimación para solicitar remedios al amparo de la Ley 80, *supra*, pero InSite ya no es parte en este litigio, toda vez que el TPI autorizó una Demanda Enmendada que excluye a dicha parte; y (iii) la orden no beneficia a Caribbean pero perjudica al peticionario, ya que fue redactada en términos tan amplios que ha tenido el efecto de privarlo de ganarse la vida.

El 9 de abril de 2014 la parte recurrida presentó *Oposición Urgente a Moción en Auxilio de Jurisdicción por Incumplimiento con Requisito de Notificación de Conformidad con la Regla 79 (E) del Reglamento del Tribunal de Apelaciones*. Sostuvo que de la propia moción en auxilio de jurisdicción surgía que no fue notificada de manera simultánea, ya sea personalmente, por teléfono o por correo electrónico conforme lo establece el ordenamiento procesal del Tribunal de Apelaciones. Indicó que la notificación por correo certificado con acuse de recibo no cumple con lo requerido en la regla antes citada.

## II.

Examinados los autos nos encontramos en posición de resolver.

### A.

El auto de *certiorari*, 32 L.P.R.A. sec. 3491, *et seq.*, es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. El Tribunal Supremo de Puerto Rico reiteradamente ha establecido que este recurso procede para revisar tanto errores de derecho procesal como sustantivos. *Negrón v. Srio. de Justicia*, 154 D.P.R. 79, 91 (2001); *Ley de la Judicatura de Puerto Rico 2003*, Art. 4.006, 4 L.P.R.A. sec. 24y.

La Regla 52.1 de Procedimiento Civil dispone, en lo pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.
> ........

De otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII B, contiene los criterios que debemos considerar al momento de atender un recurso para que se expida un auto de *certiorari*, a saber:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

KLCE201400161 7

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En virtud de lo anterior, al evaluar un auto de *certiorari* este tribunal se guiará por los criterios anteriormente expresados y utilizará su discernimiento para entender o no en los méritos de los asuntos.

B.

Por otro lado, el recurso de *injunction* o interdicto está reglamentado por la Regla 57 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 57, y por los Artículos 675 al 687 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 3521-533. Dicho recurso extraordinario va dirigido a prohibir u ordenar la ejecución de algún acto determinado, así evitando causar perjuicios inminentes o daños irreparables. Por tratarse de un recurso extraordinario, los tribunales solo pueden expedir un interdicto cuando no haya otro remedio jurídico adecuado. *E.L.A. v. Asoc. de Auditores*, 147 D.P.R. 669, 679 (1999). Sin embargo, el *injunction* es un remedio dirigido principalmente contra actos futuros que amenazan ser cometidos o que se anticipa que serán cometidos. *VDE Corporation v. F & R Contractors*, 180 D.P.R. 21, 40 (2010); R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 4ta ed., San Juan, Ed. Lexis Nexis, 2007, Sec. 57.03, pág. 463.

KLCE201400161

8

La Regla 57.3 de Procedimiento Civil, 32 L.P.R.A., Ap. V, R. 57.3., establece que para expedir una orden de entredicho provisional o *injunction* preliminar, el Tribunal deberá considerar los siguientes criterios: (a) la naturaleza del daño a que está expuesto la parte peticionaria; (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne académica; (e) el impacto sobre el interés público del remedio que se solicita; y (f) la diligencia y buena fe con que ha obrado la parte peticionaria. Véase, además, *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656, 679-80 (1997).

El recurso de *injunction* es uno extraordinario de carácter discrecional. El peso de la prueba recaerá sobre la parte promovente de dicho recurso, la cual tendrá la obligación de demostrar al tribunal la ausencia de un remedio adecuado en ley, que es aquel que puede ser otorgado en una acción de daños, una criminal o cualquier otra disponible. *Pérez Vda. Muñiz v. Criado*, 151 D.P.R. 355, 373 (2000). "Mientras exista algún remedio eficaz, completo y adecuado en ley, no se considera el daño como irreparable". *Íd.*, pág. 372. La parte promovente del *injunction* deberá "demostrar que de no concederse éste antes de adjudicarse el caso en sus méritos, sufriría daño irreparable". *Misión Ind. P.R. v. J.P. y A.A.A.*, supra, pág. 682. Un daño irreparable es aquel que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles. *Pérez Vda. Muñiz v. Criado*, supra, pág. 373. De manera que, antes de expedir un *injunction*, ya sea preliminar o permanente, "el tribunal debe tomar en consideración la existencia o ausencia de algún otro remedio adecuado

en ley que evite la expedición del *injunction*". *Íd.* La concesión del auto de *injunction* descansará únicamente en la sana discreción del tribunal, la cual será desplegada tomando en cuenta las necesidades e intereses de las partes. *Misión Ind. P.R. v. J.P. y A.A.A., supra,* pág. 680.

### C.

La *Ley Para La Protección De Secretos Comerciales e Industriales* vigente, Ley Núm. 80 de 3 de junio de 2011, 10 L.P.R.A. 4131, *et seq.* (Ley 80), es la fuente de derecho para resolver la controversia aquí planteada. Esta ley se tiene que armonizar con los principios generales del *Injunction*, para atemperarlos al remedio de *Injunction* especial que concede el referido precepto ya que existen varias diferencias conceptuales. (*Véase*, Art. 8, Ley 80) Para el *Injunction* preliminar especial de la Ley 80, *supra*, no se requiere la evidencia particular del daño irreparable.

La Ley 80, *supra*, dispone en su Exposición de Motivos, que un secreto comercial puede ser un proceso, fórmula, receta, proyecto, patrón, "o bien, simplemente una lista de clientes especializados y constitutivos de un mercado determinado que confieran alguna ventaja a su dueño sobres sus competidores". Del referido *secreto comercial* se deriva un valor económico independiente, por lo que en nuestra jurisdicción, se le reconoce valor a las medidas razonables de seguridad que establecen los propietarios de dicha "información".

La Ley 80, en su Artículo 7, 10 L.P.R.A. sec. 4135, provee determinados remedios, exclusivamente a favor del "dueño de un secreto comercial", quien para prevalecer tendría que establecer "que el demandado se apropió indebidamente del secreto comercial".

> El Artículo 3 de la Ley 80, 10 L.P.R.A. sec. 4132, establece lo siguiente:
>
>> Se considera un Secreto Comercial, o Secreto Industrial toda información:
>>
>> a) de la cual se deriva un valor económico independiente, ya sea un valor actual o un valor potencial, o una ventaja comercial, debido a que tal información no es de conocimiento común o accesible por medios apropiados por aquellas personas que pueden obtener un beneficio pecuniario del uso o divulgación de dicha información; y;
>> b) que ha sido objeto de medidas razonables de seguridad, según las circunstancias, para mantener su confidencialidad.
>>
>> Será también parte del Secreto Comercial toda información generada, utilizada o resultante de los intentos fallidos realizados en el proceso de desarrollar el mismo.
>
> A su vez, el Artículo 4, 10 L.P.R.A. sec. 4133, establece que las medidas razonables de seguridad son aquellas medidas cautelares que se deberán tomar para limitar el acceso a la información bajo circunstancias particulares. Se determinarán de acuerdo a la previsibilidad de la conducta mediante la cual el Secreto Comercial pueda ser obtenido y la naturaleza del riesgo de que se dé tal conducta, así como a la relación costo-beneficio entre la medida de seguridad y el Secreto Comercial.
>
> **D.**
>
> En cuanto a la moción en auxilio de jurisdicción, la Regla 79(E) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 79(E), dispone lo siguiente:
>
>> (E) Cualquier solicitud de orden bajo esta Regla…, deberá ser **notificada a las demás partes**, y a cualquier persona contra quien se solicita un remedio, **mediante el método que asegure que éstas queden notificadas de la solicitud simultáneamente con su presentación y hará constar la notificación en la propia solicitud**. De presentarse la solicitud de orden el mismo día en que se presenta el recurso, la notificación simultánea de dicha solicitud

> incluirá la notificación del recurso con su Apéndice. **A los fines de la notificación simultánea a que se refiere esta Regla, podrán utilizarse los métodos de notificación personal, por teléfono[sic], telefax o correo electrónico, de forma que las partes advengan en conocimiento de la solicitud de orden y del recurso inmediatamente de su presentación.** (Énfasis suplido).

Conforme a lo anterior, se declara No Ha Lugar la moción de auxilio de jurisdicción, toda vez que el peticionario no cumplió con lo establecido en la Regla 79 (E) antes citada, ya que utilizó como medio de notificación el servicio postal mediante acuse de recibo.

### III.

En el presente caso, el peticionario plantea que el TPI erró al conceder el *injunction* preliminar solicitado por Caribbean, toda vez que: (i) la información que ésta pretende proteger mediante la solicitud del mencionado recurso no constituye un secreto comercial conforme dicho término es definido por la Ley 80; (ii) los recurridos no cumplieron con demostrar que dicha información fue objeto de medidas razonables de seguridad para mantener la confidencialidad, y; (iii) los tribunales en Puerto Rico carecen de jurisdicción en el caso de epígrafe, toda vez que los contactos dominantes están en las USVI.

De otra parte, sostienen los recurridos que el TPI concluyó que durante la vista quedó evidenciado que la información que los demandantes-recurridos solicitaban que se protegiera en efecto constituía un secreto comercial, conforme dicho término es definido por la Ley 80, *supra*. Indican que el TPI basó la determinación en que la información recopilada por el señor Safreed durante su relación de trabajo con Caribbean le confería una ventaja comercial a Caribbean, ya que esa "información no es de conocimiento común y accesible por

KLCE201400161

12

medios apropiados por aquellas personas que pueden obtener un beneficio pecuniario del uso o divulgación de dicha información" tal y como dispone la Ley 80, *supra*. De igual forma, los recurridos argumentan que la Ley 80, *supra*, no requiere necesariamente la existencia de una cláusula de confidencialidad o un contrato de no competencia para que se dé por cumplido el requisito de haber tomado las medidas razonables para proteger la confidencialidad de los secretos comerciales. Además, éstos plantean que el peticionario mantiene contactos mínimos o cualquier contacto con esta jurisdicción que la hace compatible con las disposiciones constitucionales aplicables. En síntesis, indican que el peticionario no demostró que el TPI incurriera en abuso de discreción o que esté presente alguno de los demás criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, que justifique la expedición del auto solicitado.

Conforme a la prueba desfilada en la vista de *injunction*, el TPI concluyó, que la información que los recurridos solicitaban se protegiera, en efecto constituía un secreto comercial. Así también, expresó que a pesar de que algunos de los medios utilizados por el señor Safreed estuviesen disponibles al público en general a través del internet o de portales electrónicos de búsqueda, la información le conferia ventaja significativa a Caribbean. El TPI determinó que Caribbean había cumplido con el requisito de la Ley 80, *supra*, "de haber tomado medidas cautelares o de seguridad para la protección de sus secretos comerciales". Indicó que del "testimonio del señor Campbell se desprende que éste discutió en varias ocasiones con los

empleados o contratistas de Caribbean, incluyendo a Safreed, el carácter sensitivo y confidencial de la información".[5]

Surge del testimonio del señor Campbell, que le había indicado al peticionario sobre la cláusula de no competencia por medio de un correo electrónico y que no hubo un contrato de no competencia con sus empleados[6]. En específico, el señor Campbell testificó lo siguiente:

> LCDO. RODRÍGUEZ:
> Okay. Could you please, generally, just... you know, state what conditions are...
> TESTIGO:
> Well...
> LCDO. RODRÍGUEZ:
> ... that you listed there?
> TESTIGO:
> ... if you turn to page 2, it has the outline of a compensation plan for PR Towers Site Development Group. And the site development group was going to consist of Pablo Nicolini, Fernando Coronel and Brian Safreed. And this just said how we were going to do everything, and how people are going to be paid.
> And the relevant part that bring us here today is the third paragraph from the end, that said non-compete. And I should mention Judge, that Pablo Nicolini everybody calls him Matty (phonetics). So, When you see it says non-compete Brian, Matty. Matty is Pablo Nicolini. And Fernando agreed to only offer site acquisitions and tower site development services to Puerto Rico Tower and Insite, and no other tower company or entity on Puerto Rico or the U.S. Virgin Islands.
> All... all three of them agreed to that at that meeting. And ... and proof of that agreement occurs because Brian responded to this e-mail, and did not object to the non-compete clause, and instead just had some other follow up points.
> LCDO. RODRÍGUEZ:
> Okay. I don't see any... It talks about PR Tower and Insight; but I don't see Caribbean. Why is that?
> TESTIGO:
> Well, that was an entity that we formed later to focus particularly on these opportunities.
> LCDO: RODRÍGUEZ:
> Okay. What was the importance of this provision, particularly as it relates to... you know, the competitive nature of the information gathered by Mr. Safreed?
> TESTIGO:

---

[5] Resolución del TPI, pág. 13; Apéndice de la Petición de *Certiorari*, pág. 139.
[6] Apéndice de la Petición de *Certiorari*, pág. 378.

KLCE201400161

14

> I didn't want to invest my time teaching these guys this business if they were then going to us it against me, because this isn't something that, you know, a person with... you know, a college degree can pick up without learning the business, and having someone explains and teach then how to go about doing it. And so, it was going to take me time and energy to teach them how to do all these. And I didn't want that to be used against me in the future, so that is why I... that's why... And they understood that, and that's why they agreed to it, and that's why it was part of this document.
> LCDO. RODRÍGUEZ:
> And what about the opportunities they could discover or find, were they also supposed to be offered only to you?
> TESTIGO:
> Yes. Yeah, because if they were not offered to me that would have been in violation of this point.[7]

Asimismo, narró que parte del trabajo del señor Safreed era buscar terrenos permanentes para los clientes, y que en particular, le encargó buscarle un terreno permanente en *Work and Rest*. Indicó que en el caso de *Work and Rest* le había hecho al dueño del terreno un dibujo para mostrarle cómo se vería el mismo.[8] Asimismo, mencionó que la información respecto a los clientes y terrenos era una sensitiva y confidencial. Respecto a esto, el señor Campbell declaró que:

> LCDO. RODRÍGUEZ:
> Now. How would you describe the information regarding site candidates and potential landlords that Mr. Safreed was engaged to produce? Sensitive? Was it sensitive information?
> TESTIGO:
> Extremely sensitive.
> LCDO. RODRÍGUEZ:
> Why?
> ...
> TESTIGO:
> Because, if that information were to become public it would be extremely detrimental to me and my business on a number of different levels. In the first place, if the... if the people that we were talking to, lets say just this last 2 guys, the last 2 landowners that were our prime site candidates for the Work and Rest search ring. If somebody would put an add in the paper that say, "Hey, look at what Caribbean Tower Sites is drawing up and presented to the owners of

---

[7] Apéndice de la Petición de *Certiorari*, págs. 237-239.
[8] Apéndice de la Petición de *Certiorari*, págs. 245-246.

KLCE201400161 15

> parcel 273-A, and parcel 273, in state Work and Rest in St. Croix". What would have happened?
> Well, competitors could have gone and said... they could have done just what Brian did and say, "Hey, how much is Caribbean Tower Sites is offering you do... to lease the land? We'll offer you more". Well clearly that's to my detriment; so, I want to keep that information secret. Additionally, if the neighbors might find out that there is potentially going to be a tower next to them, then they could cause all sort of problems and call up their... call up their neighbor and say, "Hey, don't do that" or, you know, "I'll give you money not to do that". But secrecy and candidates is of outmost importance.[9]

De igual forma, el señor Campbell testificó sobre las medidas que había tomado para mantener la información confidencial. Este le había indicado a sus empleados que actuaran profesionalmente, que no hablaran en voz muy alta, que tuviesen contraseñas en sus computadoras y celulares para proteger la información confidencial del negocio.[10] No obstante, no especificó que otras medidas tomaba para mantener la confidencialidad de la información.

El señor Campbell declaró que la información confidencial que intentaba proteger eran los nombres de los propietarios de terrenos y sus números de teléfono.[11] Sobre lo antes mencionado, declaró lo siguiente:

> LCDA. SILVA:
> Okay. Mr. Campbell, you stated earlier that what you were trying to protect your "trade secret" is the name of potential landlords and phone numbers for the sites.
> TESTIGO:
> The contact information, Yes.
> LCDA. SILVA:
> That's it.
> TESTIGO:
> No...
> LCDA. SILVA:
> Name and number, phone number.
> TESTIGO:
> I did state that. Yes.

---

[9] Apéndice de la Petición de Certiorari, págs. 246-249.
[10] Apéndice de la Petición de Certiorari, pág. 253 y la pág. 318.
[11] Apéndice de la Petición de Certiorari, pág. 311.

KLCE201400161

16

> LCDA. SILVA:
> Yes. So... And, you are aware that the same of landlords and the phone numbers are accessible through public means. Right? You don't have to have a top secret clearance to get the name and number of them.
> TESTIGO:
> No.
> LCDA. SILVA:
> Right. So, it's public. Right?
> TESTIGO:
> Well, I...
> LCDA. SILVA:
> You can go to the phone book.
> TESTIGO:
> I... No. You can't go to the phone book.
> LCDA. SILVA:
> You can find the name on the phone book...
> LCDA. SILVA:
> Right
> TESTIGO:
> ... but, you need to find what name you are looking for...
> LCDA. SILVA:
> Correct.
> TESTIGO:
> ... in the phone book. And, that's...
> LCDA. SILVA:
> But... And, that's...
> TESTIGO:
> ... and that is not found by looking in the phone book.
> LCDA. SILVA:
> No. That's by going to the tax maps and the...
> TESTIGO:
> Or the office of the Lieutenant Governor...
> LCDA. SILVA:
> Right.
> TESTIGO:
> ... or the cadastral, or doing the research that is necessary to find out a person's name, yes.
> LCDA. SILVA:
> Correct. So, that's all public information.
> TESTIGO:
> Yes.
> LCDA. SILVA:
> So, if I go to the Virgin Islands and I want this land I can go and just look it up. Right.
> TESTIGO:
> Yes.

Por otro lado, el señor Safreed indicó en su testimonio que buscaba la información para la adquisición de terrenos en el dominio público. Específicamente, en torno a la accesibilidad de la información explicó lo siguiente:

> LCDA. MUÑOZ:
> Where did you look or find the information for the acquisition of the sites?
> TESTIGO:
> In the public domain, in the governments" section.
> LCDA. MUÑOZ:
> Well, but explain it.
> TESTIGO:
> Sure. Once I knew there was a location there is computer systems that the government has that identifies properties, and also computer systems that identity property owners information based on the tax... current tax incentives (phonetics).
> LCDA. MUÑOZ:
> You use the internet?
> TESTIGO:
> That is correct.
> LCDA. MUÑOZ:
> Government sites?
> TESTIGO:
> Government sites, and internet. Yes, ma'am.
> LCDA. MUÑOZ:
> And, when you find those... that information, what did you do?
> TESTIGO:
> Well, when we got the information on particular site candidates I provide those information to John's review and also to AT&T's review, to make sure those sites were acceptable produced.[12]

Así también, el señor Safreed explicó lo que era un *Sip Package*[13] e indicó que ésta contenía información relacionada el terreno, como por ejemplo: el nombre del dueño del terreno o propiedad, la localización, el potencial de alquiler, la información de la zona para al terreno, mapas, direcciones para llegar, fotografías e imágenes aéreas del terreno. También podría contener un dibujo de la localización del terreno y del área donde estaría ubicada la torre.[14]

Del testimonio del señor Safreed surge que guardaba la información de los *Sip Packages* en la computadora de Caribbean. No obstante, cuando cesó de trabajar para Caribbean borró toda la

---

[12] Apéndice de la Petición de *Certiorari*, pág. 333.
[13] En ocasiones en la transcripción surge como *Skip Package*.
[14] Apéndice de la Petición de *Certiorari*, pág. 337.

información contenida en la computadora.[15] A pesar de haber indicado poder crear éstas nuevamente, esta información aun no ha sido entregada a la parte recurrida.

En el caso de autos no surge de los testimonios vertidos las medidas específicas que tomó el señor Campbell para proteger la información confidencial y sensitiva de negocio. Más allá de indicarle a sus empleados que no hablaran en voz muy alta, que tuviesen contraseñas en sus computadoras y celulares para proteger la información confidencial del negocio[16], éste no especificó qué otras medidas tomaba para mantener la confidencialidad de la información.

En el presente caso, tampoco quedó claro si la información recopilada e incluida en los *sip packages* era información de fácil acceso al público en general. Entendemos que es importante auscultar si el señor Safreed visitó algunos de los propietarios de terrenos incluidos en las listas preparadas. Es decir, si éste se apropió de la información confidencial del negocio de Caribbean (de ser dicha información confidencial) y utilizó la misma a su favor.

Conforme a lo antes discutido, resolvemos expedir el auto de *certiorari*, revocar la resolución recurrida y devolver el caso al TPI para la celebración de una vista evidenciaría en la que se dirima el carácter confidencial de la información de negocio.

En cuanto a la solicitud del peticionario para que ordenemos a Caribbean presentar fianza, determinamos que es el TPI quien debe resolver las mociones presentadas por las partes en torno a la fianza. Conforme a ello y a lo mencionado anteriormente, devolvemos el caso al

---

[15] Apéndice de la Petición de *Certiorari*, pág. 358.
[16] Apéndice de la Petición de *Certiorari*, pág. 253 y la pág. 318.

KLCE201400161                                                                 19

TPI para que dirima todas las mociones presentadas y para que celebre una vista evidenciaria sobre el carácter confidencial de la información de negocio.

**IV.**

Por todo lo antes expuesto, resolvemos expedir el auto de *certiorari*, revocar la resolución recurrida y devolverle el caso al foro de instancia para que celebre una vista evidenciaria en un término de diez (10) días, contados a partir de la notificación de esta sentencia, para dirimir el carácter confidencial de la información de negocio. Así también, declaramos no ha lugar la moción en auxilio de jurisdicción.

Notifíquese.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones