**ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE CAROLINA**

| | |
|---|---|
| CARIBBEAN TOWER SITES, LLC., <br><br> Demandante <br><br> vs. <br><br> BRIAN SAFREED, BLUE WAVE TECH CORP., <br><br> Demandados | CIVIL NÚM.: FPE 2013-0883 (402) <br><br> SOBRE: <br><br> ALEGADA APROPIACIÓN INDEBIDA DE SECRETOS COMERCIALES; INTERDICTO PRELIMINAR Y PERMANENTE; DAÑOS Y PERJUICIOS |

**CONTESTACIÓN A LA DEMANDA ENMENDADA Y RECONVENCIÓN**

**AL HONORABLE TRIBUNAL:**

COMPARECE la co-demandada, Blue Wave Tech Corp. ("BWT"), por conducto de su representación legal que suscribe, se somete voluntariamente a la jurisdicción de este Honorable Tribunal sin que se haya diligenciado el emplazamiento que expidió este Honorable Tribunal y muy respetuosamente presenta la Contestación a la Demanda Enmendada:

**I. PARTES**

1. En cuanto a la primera oración del párrafo 1, se admite que Caribbean Tower Sites, LLC, ("Caribbean" o "CTS") aparece en el registro del Departamento de Estado de Puerto Rico y se niega el resto de las alegaciones de dicha primera oración, por falta de información o creencia sobre su veracidad. La segunda oración del párrafo 1 se niega, por falta de información o creencia sobre su veracidad. La tercera oración del párrafo 1, se admite.

2. Las alegaciones contenidas en el párrafo 2 de la Demanda Enmendada, se admiten.

3. De las alegaciones contenidas en el párrafo 3 de la Demanda, se admite únicamente que BWT es una corporación existente y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico y que el co-demandado Sr. Brian Safreed es el propietario de la totalidad de las acciones de la corporación. Se admite además que Caribbean efectuó algunos pagos a Blue Wave Tech Corp (en adelante "Blue Wave") por servicios prestados a dicha corporación. El resto de las alegaciones incluidas en dicho párrafo 3, se niegan tal y como redactadas. Se alega en la afirmativa que BWT y

1

CTS nunca suscribieron un contrato ni acordaron exclusividad o término alguno que obligue a BWT a tener el deber de lealtad a que se refieren estas alegaciones. Se alega además que BWT está registrada desde el 22 de julio de 2009 como una corporación íntima bajo la Ley de Corporaciones de Puerto Rico.

## II.    HECHOS

4. El párrafo 4 de la Demanda Enmendada se niega por falta de información suficiente sobre su veracidad o falta de ella, la cual se tendrá que obtener mediante los mecanismos de descubrimiento de prueba. La compareciente BWT alega en la afirmativa, que las alegaciones sobre InSite Wireless Group, LLC ("InSite Wireless"), incluidas en este párrafo 4 son suficientes para demostrar por sí y en conjunto con otras alegaciones de la Demanda Enmendada, que dicha entidad es la parte con legitimación activa para solicitar los remedios que se especifican en la Demanda Enmendada y a su vez, que Caribbean carece de tal legitimación. InSite Wireless ya no es parte en este caso. Por lo tanto, las reclamaciones de la Demanda Enmendada presentadas por Caribbean deben ser desestimadas particularmente porque en la misma no se efectúan alegaciones sobre la alegada cesión de los derechos de InSite Wireless a favor de la demandante Caribbean y porque la parte demandante ha omitido alegar o demostrar su legitimación activa para efectuar las reclamaciones que se incluyen en la demanda.

5. El párrafo 5 se niega por falta de información para formular una alegación sobre su veracidad, sujeto a la información que se obtenga durante el descubrimiento de prueba. Se alega en la afirmativa que las alegaciones del párrafo 5 tratan sobre una entidad identificada como InSite Towers, LLC, la cual no es ni nunca ha sido parte en el presente litigio. De ser ciertas las alegaciones incluidas en este párrafo 5, InSite Towers es la única entidad que tiene legitimación para solicitar los remedios que se especifican en la Demanda Enmendada. Por lo tanto, ya que InSite Towers no es parte en este caso, las causas de acción incluidas en la Demanda al amparo de la Ley 80 se deben desestimar, debido, entre otras, a la ausencia de la parte con legitimación para solicitar los remedios que concede dicha legislación.

6. Las alegaciones contenidas en el párrafo 6 van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación respondiente, se niegan tal cual redactadas.

7. Las alegaciones contenidas en el párrafo 7 van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación respondiente se admite únicamente que Safreed, presidente de BWT prestó servicios en los cuales se incluyen algunas o todas las funciones especificadas con los número (1), (2), (3) y (5) de este párrafo de la Demanda Enmendada. El resto de las alegaciones contenidas en el párrafo 7, se niegan.

8. De las alegaciones contenidas en el párrafo 8 sólo se acepta que el gobierno de las Islas Vírgenes de Estados Unidos estableció una moratoria mediante la cual prohibió la emisión de permisos para la construcción de torres de telecomunicaciones. El resto de las alegaciones se niegan o se niegan tal cual redactadas, sujeto a la información que se obtenga durante el descubrimiento de prueba. Se alega en la afirmativa que la moratoria a que se refiere dicho párrafo comenzó en diciembre de 2008, no en 2009, y que el gobierno de las Islas Vírgenes de Estados Unidos puso en efecto la moratoria como reacción a acciones indebidas de John Campbell.

9. Las alegaciones contenidas en el párrafo 9 van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. Además debido a que la parte compareciente no ha sido emplazada no tiene copia ni se le han provisto los documentos designados como Anejos Confidenciales 1 y 2 de la Demanda Enmendada. De requerir alegación por información y creencia se alega que de las alegaciones incluidas en este párrafo de la Demanda Enmendada, solamente se acepta que Safreed compareció en algunos contratos de alquiler de facilidades que se utilizarían para la instalación de torres de telecomunicaciones en las Islas Vírgenes de Estados Unidos. El resto de las alegaciones se niegan según redactadas en dicho párrafo 9. Se alega en la afirmativa que la participación de Caribbean como se alega es incompatible en este párrafo de la Demanda Enmendada con lo alegado en la Demanda original, ya que las alegaciones contenidas en este párrafo 9 de la Demanda Enmendada son idénticas a las contenidas en el párrafo 9 de la Demanda original,

excepto que donde se incluyó originalmente a "InSite Wireless" ha sido sustituido por Caribbean.

10. Las alegaciones contenidas en el párrafo 10 de la Demanda Enmendada se niegan tal y como redactadas. Las mismas se refieren a un evento alegadamente ocurrido el 12 de noviembre de 2013, que es una fecha futura a la fecha en que se presentó la Demanda. Se alega en la afirmativa además que la participación de Caribbean como se alega es incompatible con lo alegado en la Demanda original ya que las alegaciones contenidas en este párrafo 10 de la Demanda Enmendada son idénticas a las contenidas en el párrafo 10 de la Demanda original, excepto que donde se incluyó originalmente a "InSite Wireless" ha sido sustituido por Caribbean. El resto de las alegaciones del párrafo 10 se niegan, por falta de información para formular una alegación respondiente y sujeto a lo que surja del descubrimiento de prueba. Se aclara además que el párrafo 10 de la Demanda Enmendada incluye alegaciones concernientes a transacciones de la entidad identificada como InSite Wireless Group, LLC ("InSite Wireless") a pesar de que dicha entidad ya no es parte en este caso, pues no se le identifica como parte en la Demanda Enmendada. Las alegaciones del párrafo 10 de la Demanda Enmendada demuestran por sí y en conjunto otras alegaciones de la misma que InSite Wireless es una parte indispensable a este litigio y/o es la parte con legitimación para solicitar los remedios que se solicitan en la Demanda Enmendada al amparo de la Ley 80. Por lo tanto, las reclamaciones de la Demanda Enmendada al amparo de la Ley 80 se deben desestimar, entre otras, debido a la ausencia de la parte con legitimación para solicitar remedios al amparo de dicho estatuto.

11. Las alegaciones contenidas en el párrafo 11 van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan.

12. Las alegaciones contenidas en el párrafo 12 van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan..

13. Las alegaciones contenidas en el párrafo 13 van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan. Se alega en la afirmativa que Safreed y la compareciente BWT se vieron obligados a concluir la relación con las compañías que controla el Sr. John Campbell y con éste mismo, debido al incumplimiento de parte de dichas entidades o del propio Sr.

Campbell con los compromisos, representaciones y obligaciones que contrajeron con Safreed y BWT para la prestación de servicios por parte de éste último.

14. Las alegaciones contenidas en el párrafo 14 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se admite únicamente que Caribbean por conducto de Campbell efectuó una solicitud de parte de la información y documentos que se enumeran en este párrafo de la demanda enmendada. Se niega específicamente la existencia de secretos comerciales y la retención de información por parte de Safreed, quien le había entregado previo a dichas solicitudes a Caribbean, a In Site Wireless o el propio Sr. Campbell parte o la totalidad de la información que se le requirió.

15. Las alegaciones contenidas en el párrafo 15 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se admite únicamente que en la fecha mencionada en ese párrafo de la Demanda Enmendada, se formuló un requerimiento al Sr. Safreed. Se niega específicamente la existencia de secretos comerciales y la retención de información perteneciente a la parte demandante por parte de Safreed, quien le había entregado previo a dichas solicitudes a Caribbean, a InSite o el propio Sr. Campbell parte o la totalidad de la información que se le requirió.

16. Las alegaciones contenidas en el párrafo 16 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se admite únicamente que en la fecha indicada en este párrafo, se remitió comunicación al Sr. Safreed. Se niegan que se requerimiento fuera realizado por Caribbean. Se alega en la afirmativa que InSite Wireless no tenía relación profesional o contractual alguna con el demandado Safreed o la compareciente BWT. Además, InSite Wireless ya no es parte en este caso, pues no se le identifica como parte en la Demanda Enmendada, a pesar de que las alegaciones del párrafo 16 demuestran por sí y en conjunto con otras alegaciones de la Demanda Enmendada, que InSite Wireless es la parte con legitimación para solicitar los remedios que se solicitan en la Demanda Enmendada al amparo de la Ley 80. Por lo tanto, las reclamaciones de la Demanda Enmendada al amparo de la Ley 80 se deben desestimar, entre otras, debido a la ausencia de la parte con legitimación para solicitar tales remedios. Se niega

5

específicamente la existencia de secretos comerciales y la retención o negativa a entregar información por parte de Safreed quien le había entregado a Caribbean, a InSite Wireless o el propio Sr. Campbell, previo a dichas solicitudes, parte o la totalidad de la información que se le requirió.

17. Las alegaciones contenidas en el párrafo 17 de la Demanda Enmendada, se niegan. Se niega específicamente que TowerCo. sea competidor de InSite Wireless. Además, se alega que InSite Wireless no tenía relación profesional alguna con el co-demandado Safreed o la compareciente BWT. InSite Wireless ya no es parte en este caso, pues no se le identifica como parte en la Demanda Enmendada, a pesar de que las alegaciones del párrafo 17 demuestran por sí y en conjunto con otras alegaciones de la Demanda Enmendada, que InSite Wireless es la parte con legitimación para solicitar los remedios que se solicitan en la Demanda Enmendada al amparo de la Ley 80. Por lo tanto, las reclamaciones de la Demanda Enmendada al amparo de la Ley 80 se deben desestimar, entre otras, debido a la ausencia de la parte con legitimación para solicitar tales remedios.

18. Las alegaciones contenidas en el párrafo 18 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se acepta únicamente que Safreed actuando como agente de BWT tuvo comunicación con dueños de terrenos localizados en diferentes áreas de búsqueda en Islas Vírgenes a nombre de TowerCo. El resto de la alegación, se niega. Se alega en la afirmativa que ni Caribbean, ni InSite Wireless ni InSite Towers tienen al presente asignación alguna para proveerle sitios o torres de comunicaciones a AT&T en las Islas Vírgenes estadounidenses. TowerCo. es una de las compañías que tiene esa encomienda de parte de AT&T, y según información y creencia es al presente la única compañía de telecomunicaciones interesada en tener acceso y arrendar o ceder torres de telecomunicaciones en las Islas Vírgenes estadounidenses a AT&T.

19. Las alegaciones contenidas en el párrafo 19 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niega.

20. Las alegaciones contenidas en el párrafo 20 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan.

21. Las alegaciones contenidas en el párrafo 21 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan.

22. Las alegaciones contenidas en el párrafo 22 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan. Se alega en la afirmativa que Caribbean u otras entidades controladas por Campbell o el propio Sr. Campbell incumplieron los compromisos, representaciones y obligaciones que contrajeron con Safreed y BWT para la prestación de servicios por parte de Sr. Safreed y BWT.

III. **PRIMERA CAUSA DE ACCIÓN**

23-29. Las alegaciones contenidas en los párrafos 23 al 29 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan. Las mismas son primordialmente conclusiones de derecho, las cuales son erróneas y se apartan del derecho aplicable y de los hechos que se alegan en la Demanda Enmendada. Se alega en la afirmativa que: a) ni el co-demandado Safreed ni la compareciente BWT se han apropiado, ya sea debida o indebidamente, de secreto comercial alguno que perteneciera a la parte demandante; b) la información que la parte demandante alega que constituye secretos comerciales no le otorga ventaja competitiva alguna a la demandante Caribbean sobre otros competidores y por ende no es un "secreto comercial" protegido por la Ley 80; c) cualquier utilidad que tuvo tal información cesó antes de que Safreed o BWT terminaran su relación profesional con Caribbean, con John Campbell o las otras entidades controladas por éste; d) Ni el co-demandado Safreed ni BWT han contactado a dueños de terrenos para la ubicación de torres de telecomunicaciones permanentes en detrimento de la parte demandante, ya que la demandante carece al presente de oportunidad de arrendar o ceder torres de comunicaciones en las Islas Vírgenes de Estados Unidos; e) uno de los factores determinantes al evaluar la causa de acción ejercida por la demandante es si existe la oportunidad de hacer negocios con las

7

compañías de comunicaciones que tienen necesidad de tales torres, y la parte demandante ni InSite Wireless tienen desde antes de junio de 2013 y hasta el presente posibilidad alguna de hacer negocios con tales compañías para la ubicación de torres nuevas ya que tales compañías, particularmente AT&T -la única compañía de telecomunicaciones que al presente está interesada en tener acceso a torres de telecomunicaciones en las Islas Vírgenes estadounidenses- le otorgó derechos exclusivos para esas tareas a otras empresas, no a la parte demandante; f) Nunca ha existido contrato escrito entre BWT ni Safreed con la demandante ni existió acuerdo de confidencialidad o no competencia entre las partes; g) La parte demandante no efectuó las gestiones de protección de la información que alega es un secreto comercial que se requieren para obtener protección al amparo de la Ley 80.

Se alega en la afirmativa además que las alegaciones contenidas en el párrafo 15 de la Demanda Enmendada concernientes a una entidad identificada como InSite Wireless Group, LLC ("InSite Wireless") que no es parte en este caso, demuestran por sí mismas y en conjunto con otras alegaciones de la Demanda Enmendada, que InSite Wireless es la parte con legitimación para solicitar los remedios que se solicitan en la Demanda Enmendada al amparo de la Ley 80. Por lo tanto, las reclamaciones de la Demanda Enmendada al amparo de la Ley 80 se deben desestimar, además de las razones antes expresadas, debido a la ausencia de la parte con legitimación para solicitar tales remedios.

IV.     **SEGUNDA CAUSA DE ACCIÓN**

30-34. Las alegaciones contenidas en los párrafos 30 al 34 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan. Se alega en la afirmativa que las mismas son primordialmente conclusiones de derecho, las cuales son erróneas y se apartan del derecho aplicable y de los hechos que se alegan en la Demanda Enmendada. Bajo el derecho aplicable, no se justificaba ni se justifica al presente mucho menos que se le otorgue a Caribbean un remedio de interdicto o *injunction* provisional contra BWT. Entre otras, por las siguientes razones: a) Caribbean no tenía ni tiene legitimación para solicitar remedio alguno bajo la Ley 80, lo cual demuestran las alegaciones de la Demanda y de la Demanda Enmendada; b) como resolvió el Tribunal de Apelaciones

8

en su Sentencia de 22 de abril de 2014, Caribbean no ha establecido que tenga probabilidad de prevalecer en los méritos ni puede establecer que ha sufrido algún daño que justifique la concesión del remedio extraordinario; c) La parte demandante ha admitido que sólo necesitaba el remedio de *injunction* preliminar para obtener cierta información que ya ha sido provista en su totalidad[1], por lo cual ese remedio es completamente improcedente; d) Entre la demandante y Safreed o BWT no existe ni existió contrato escrito, ni acuerdo que establezca obligaciones de confidencialidad o no competencia; e) Toda actuación de Safreed o de BWT respecto a las compañías controladas por Campbell fue siempre en carácter de contratista independiente; f) cualquier necesidad o procedencia del interdicto provisional ha desaparecido al presente, particularmente en consideración al hecho de que el 25 de febrero de 2014, Safreed, remitió a la representación legal de CTS dos discos (CD) que contienen toda la información que éste tenía en su poder que fue requerida por Caribbean y cuya entrega fue ordenada por este Honorable Tribunal; g) La parte demandante no efectuó las gestiones de protección de la información que alega es un secreto comercial que se requieren para obtener protección al amparo de la Ley 80.

## V. TERCERA CAUSA DE ACCIÓN

35-36. Las alegaciones contenidas en los párrafos 35 al 36 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan. Se alega en la afirmativa que dichas alegaciones son primordialmente conclusiones de derecho, las cuales son erróneas y se apartan del derecho aplicable y de los hechos que se alegan en la Demanda Enmendada. Las alegaciones en dichos párrafos versan sobre InSite Wireless y sobre Caribbean, mas InSite Wireless no tenía ni tiene relación profesional o comercial alguna con el co-demandado Safreed ni con la compareciente BWT. Además, InSite Wireless ya no es parte en este caso, pues no se le identifica como parte en la Demanda Enmendada. No se justifica en derecho que se le otorgue a Caribbean un remedio de interdicto permanente. Caribbean no tenía ni tiene legitimación para solicitar remedio alguno bajo la Ley 80. Las alegaciones de la Demanda y de la Demanda Enmendada demuestran que Caribbean carece de tal legitimación.

---

[1] Véase Moción Informativa de 26 de febrero de 2014 .

Caribbean no debe prevalecer en los méritos ni puede establecer que ha sufrido algún daño que justifique la concesión de un remedio extraordinario en equidad.

Se alega en la afirmativa además que Safreed no obtuvo conocimiento de secreto comercial alguno que pertenezca a la demandante Caribbean durante la relación profesional o comercial que pueda haber tenido con esta. Se alega también que entre la demandante y Safreed o BWT no existe ni existió contrato escrito ni acuerdo que establezca obligaciones de confidencialidad o no competencia. Toda actuación de Safreed o de BWT respecto a las compañías controladas por Campbell fue siempre en carácter de contratista independiente.

## VI.   CUARTA CAUSA DE ACCIÓN

37-39. Las alegaciones contenidas en los párrafos 37 al 39 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan. Se alega en la afirmativa que las mismas son primordialmente conclusiones de derecho, las cuales son erróneas y se apartan del derecho aplicable y de los hechos que se alegan en la Demanda Enmendada. Las alegaciones en dichos párrafos versan sobre InSite Wireless y/o Caribbean, mas InSite Wireless no tenía ni tiene relación profesional alguna con el demandado Safreed o BWT. Además, InSite Wireless ya no es parte en este caso, pues no se le identifica como parte en la Demanda Enmendada. Caribbean no ha sufrido daño alguno resarcible bajo el derecho puertorriqueño, por lo que su reclamación de daños es inmeritoria y no se justifica en derecho que se le otorgue Caribbean un remedio de indemnización por daños. Caribbean no tenía ni tiene legitimación para solicitar remedio alguno bajo la Ley 80 ni daños que pueda demostrar. Las alegaciones de la Demanda y de la Demanda Enmendada demuestran que Caribbean carece de tal legitimación. Caribbean no debe prevalecer en los méritos ni puede establecer que ha sufrido algún daño que justifique la concesión de un remedio, mucho menos daños. No existe relación causal alguna entre las actuaciones de Safreed y los alegados daños de Caribbean. Si Caribbean ha sufrido daños, fueron causados por terceros, no por BWT ni Safreed.

Se alega en la afirmativa además que Caribbean no ha sufrido daño alguno ya que desde antes de junio de 2013 y hasta el presente ni Caribbean ni InSite Wireless

tienen posibilidad alguna de hacer negocios con tales compañías para la ubicación de torres nuevas ya que tales compañías, particularmente AT&T -la única compañía de telecomunicaciones que al presente está interesada en tener acceso a torres de telecomunicaciones en las Islas Vírgenes estadounidenses- le otorgó derechos exclusivos para esas tareas a otras empresas, no a la parte demandante.

Se alega en la afirmativa además que Safreed no obtuvo conocimiento de secreto comercial alguno que pertenezca a la demandante Caribbean durante la relación profesional o comercial que pueda haber tenido con esta. Se alega también que entre la demandante y Safreed no existe ni existió contrato escrito ni acuerdo que establezca obligaciones de confidencialidad o no competencia. Toda actuación de Safreed respecto a las compañías controladas por Campbell fue siempre en carácter de contratista independiente.

## VII. QUINTA CAUSA DE ACCIÓN

40. Las alegaciones contenidas en el párrafo 40 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan.

41. Las alegaciones contenidas en el párrafos 41 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo cual ni se aceptan ni se niegan. De requerir alegación, se niegan. Se alega específicamente que la demandante CTS no hizo pagos al co-demandado Safreed durante el año 2013, y que pagó a BWT la suma de $17,000 dólares. Se alega en la afirmativa que entre Safreed, BWT y la demandante no existe ni existió contrato escrito ni acuerdo de exclusividad confidencialidad o no competencia y que toda actuación de Safreed y/o BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente.

42. Las alegaciones contenidas en el párrafo 42 de la Demanda Enmendada van dirigidas contra otro co-demandado. De requerir alegación se niegan. Se alega en la afirmativa que entre Safreed, BWT y la demandante no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia y que toda actuación de Safreed y/o BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente.

43. Las alegaciones contenidas en el párrafo 43 de la Demanda Enmendada van dirigidas contra otro co-demandado. De requerir alegación se niegan. Se alega en la afirmativa que entre Safreed, BWT y la demandante no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia y que toda actuación de Safreed y/o BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente.

44. Las alegaciones contenidas en el párrafo 44 de la Demanda Enmendada van dirigidas contra otro co-demandado. De requerir alegación se acepta únicamente que BWT ha realizado gestiones relacionadas con la construcción de una torre de comunicaciones en el área conocida como Gallows Bay en St. Croix. El resto de las alegaciones contenidas en este párrafo de la Demanda Enmendada, se niegan. Se alega en la afirmativa que entre Safreed, BWT y la demandante no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia, y que toda actuación de Safreed respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente.

45. Las alegaciones contenidas en el párrafo 45 de la Demanda Enmendada van dirigidas contra otro co-demandado. De requerir alegación se acepta únicamente que BWT ha realizado gestiones relacionadas con la construcción de una torre de comunicaciones en el área conocida como Bethany en St. John. El resto de las alegaciones contenidas en este párrafo de la Demanda Enmendada, se niegan. Se alega en la afirmativa que entre Safreed, BWT y la demandante no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia y que toda actuación de Safreed y/o BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente.

46. Las alegaciones contenidas en el párrafo 46 de la Demanda Enmendada van dirigidas contra otro co-demandado, por lo que ni se aceptan ni se niegan. De requerir alegación, se niegan. Se alega en la afirmativa que entre la Safreed, BWT y la demandante no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia y que toda actuación de Safreed y/o BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente. Se alega en la afirmativa además que Caribbean no que ni Caribbean ni

InSite Wireless tienen desde antes de junio de 2013 y hasta el presente posibilidad alguna de hacer negocios con AT&Tpara la ubicación de torres nuevas ya que tales compañías, particularmente AT&T -la única compañía de telecomunicaciones que al presente está interesada en tener acceso a torres de telecomunicaciones en las Islas Vírgenes estadounidenses- le otorgó derechos exclusivos para esas tareas a otras empresas, no a la parte demandante. Se niega que CTS haya sufrido daño alguno que sea resultado de las actuaciones de los demandados.

47. Las alegaciones contenidas en el párrafo 47 de la Demanda Enmendada se niegan. Se alega en la afirmativa que entre la demandante y Safreed no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia y que toda actuación de Safreed y/o BlueWave respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente. Se alega en la afirmativa además que Caribbean no que ni Caribbean ni InSite Wireless tienen desde antes de junio de 2013 y hasta el presente posibilidad alguna de hacer negocios con AT&T para la ubicación de torres nuevas ya que tales compañías, particularmente AT&T -la única compañía de telecomunicaciones que al presente está interesada en tener acceso a torres de telecomunicaciones en las Islas Vírgenes estadounidenses- le otorgó derechos exclusivos para esas tareas a otras empresas, no a la parte demandante.

48. Las alegaciones contenidas en el párrafo 48 de la Demanda Enmendada van dirigidas a otro co-demandado. De requerir alegación, se niegan.

49. Las alegaciones contenidas en el párrafo 49 de la Demanda Enmendada se niegan. Se alega en la afirmativa que entre la demandante y Safreed no existe ni existió contrato escrito ni acuerdo y que toda actuación de Safreed respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente. Se alega en la afirmativa además que Caribbean no que ni Caribbean ni InSite Wireless tienen desde antes de junio de 2013 y hasta el presente posibilidad alguna de hacer negocios con ATT& T para la ubicación de torres nuevas ya que tales compañías, particularmente AT&T -la única compañía de telecomunicaciones que al presente está interesada en tener acceso a torres de telecomunicaciones en las Islas Vírgenes estadounidenses- le otorgó derechos exclusivos para esas tareas a otras empresas, no

a la parte demandante. Se niega que CTS haya sufrido daño alguno que sea resultado de las actuaciones de los demandados. Se niega que CTS haya sufrido daño alguno que sea resultado de las actuaciones de los demandados.

50. Las alegaciones contenidas en el párrafo 50 de la Demanda Enmendada se niegan. Se alega en la afirmativa que entre la demandante y Safreed no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia y que toda actuación de Safreed y/o BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente. Se alega en la afirmativa además que Caribbean no que ni Caribbean ni InSite Wireless tienen desde antes de junio de 2013 y hasta el presente posibilidad alguna de hacer negocios con ATT& T para la ubicación de torres nuevas ya que tales compañías, particularmente AT&T -la única compañía de telecomunicaciones que al presente está interesada en tener acceso a torres de telecomunicaciones en las Islas Vírgenes estadounidenses- le otorgó derechos exclusivos para esas tareas a otras empresas, no a la parte demandante. Se niega que CTS haya sufrido daño alguno que sea resultado de las actuaciones de los demandados.

## VIII.  SEXTA CAUSA DE ACCIÓN

51. Las alegaciones formuladas en el párrafo 51 de la Demanda Enmendada van dirigidas a otro co-demandado por lo cual no requieren alegación respondiente de la compareciente. De requerir alegación, se niegan.

52. Las alegaciones formuladas en el párrafo 52 de la Demanda Enmendada van dirigidas a otro co-demandado por lo cual no requieren alegación respondiente de la compareciente. De requerir alegación, se niegan. La demandante no hizo los pagos como alega.

53. Las alegaciones formuladas en el párrafo 52 de la Demanda Enmendada van dirigidas a otro co-demandado por lo cual no requieren alegación respondiente de la compareciente. De requerir alegación, se niegan. La demandante no hizo los pagos al co-demandado Safreed como alega. La demandante no hizo los pagos como alega.

54. De las alegaciones formuladas en el párrafo 54 de la Demanda Enmendada sólo se acepta que Safreed terminó su relación con Caribbean. El resto de las alegaciones contenidas en este párrafo, se niegan tal como redactadas. Se alega en la afirmativa

que entre la demandante y Safreed no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia y que toda actuación de Safreed y/o BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente. Se niega que CTS haya sufrido daño alguno que sea resultado de las actuaciones de los demandados o que éstos adeuden suma alguna a la demandante.

55. Las alegaciones formuladas en el párrafo 55 de la Demanda Enmendada se niegan tal como redactadas. Se alega en la afirmativa que entre la demandante y Safreed no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia y que toda actuación de Safreed y/o BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente. Se aclara que aunque Caribbean efectuó algunos pagos a Safreed, no fueron por la suma ni por el concepto que se alega en este párrafo de la Demanda Enmendada. Se alega en la afirmativa además que ni Safreed ni la compareciente BWT adeudan suma alguna de dinero a la demandante y que Caribbean, John Campbell u otras entidades que éste controla incumplieron las representaciones, compromisos y obligaciones que tenían con Safreed y la compareciente BWT. La demandante no hizo los pagos como alega.

56. Las alegaciones formuladas en el párrafo 56 de la Demanda Enmendada van dirigidas a otro co-demandado por lo cual no requieren alegación respondiente de la compareciente. De requerir alegació, se niegan. Se alega en la afirmativa que entre la demandante y Safreed no existe ni existió contrato escrito ni acuerdo de exclusividad confidencialidad o no competencia y que toda actuación de Safreed y/o BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente. Se alega además que Safreed siempre cumplió con las encomiendas que se obligó a realizar para la demandante. La demandante no hizo los pagos al co-demandado Safreed como alega.

Se niega que la parte demandante tenga derecho a los remedios que solicita en la Demanda Enmendada, incluso en las páginas 15 a la 16 de dicha Demanda.

## DEFENSAS AFIRMATIVAS

1. La Demanda Enmendada no contiene alegaciones que justifiquen la concesión de remedio alguno a favor de la parte demandante.

2. La Demanda Enmendada es frívola.

3. Caribbean no tenía ni tiene legitimación para solicitar remedio alguno bajo la Ley 80. Las alegaciones de la Demanda y de la Demanda Enmendada demuestran que Caribbean carece de tal legitimación.

4. Los tribunales de Puerto Rico no son el foro más conveniente para dilucidar el presente caso por lo cual este Honorable Tribunal debe abstenerse de ejercer su jurisdicción sobre las materias involucradas en este litigio.

5. A las controversias involucradas en este caso le aplica la legislación y estado de derecho de las Islas Vírgenes de Estados Unidos, no la de Puerto Rico.

6. Los contactos dominantes de las controversias relacionadas a este litigio están en Islas Vírgenes estadounidenses, no en Puerto Rico.

7. La demanda carece de alegaciones contra BWT que justifiquen la concesión de remedio alguno.

8. Entre la demandante y BWT no existe ni existió contrato escrito ni acuerdo de exclusividad, confidencialidad o no competencia y que toda actuación de BWT respecto a las compañías controladas por Campbell, fue siempre en carácter de contratista independiente.

9. Los contratos de arrendamiento que Caribbean suscribió los hizo con dueños de terrenos ubicados en Islas Vírgenes estadounidenses.

10. Cualquier competidor de Caribbean en este caso sería uno interesado en hacer negocios en Islas Vírgenes. La naturaleza de la información que Caribbean alega que es "secreto comercial" se refiere a ubicaciones de terrenos de Islas Vírgenes y a sus dueños, información que es de naturaleza pública y accesible a todo el público.

11. El derecho sustantivo que debe ser aplicado en este caso es el de las Islas Vírgenes de Estados Unidos.

12. La Demanda Enmendada se presentó con el propósito de hostigar a los demandados y hacerle daño comercial y económico.

13. La Demanda Enmendada se presentó como un abuso de procedimientos judiciales con el propósito de hostigar, hacerle daño al demandado e impedir que el demandado Safreed pueda continuar operando sus negocios o ejerciendo su oficio.

14. El *injunction* preliminar que obtuvieron Caribbean e InSite Wireless es excesivamente amplio, contrario a equidad y al derecho aplicable, no protege interés jurídico alguno de Caribbean ni de InSite y le causó y le continúa causando daños considerables a la co-demandada BWT, a pesar de no haber sido emplazada..

15. El *injunction* preliminar que obtuvieron Caribbean e InSite Wireless es inoficioso, pues no se prestó la fianza que exige la Regla 57.4 de las de Procedimiento Civil.

16. No existe relación causal alguna entre la conducta que se le imputa a los demandados en la Demanda Enmendada y los daños que se alegan en la misma.

17. Caribbean no ha sufrido daños.

18. La conducta que Caribbean le imputa a Safreed no tuvo, no tiene, ni tendrá efecto negativo alguno contra Caribbean.

19. Caribbean no tiene contrato ni acuerdo alguno con AT&T para la ubicación y uso de nuevas torres de telecomunicaciones en las Isla Vírgenes de Estados Unidos ni para la instalación de torres permanentes de telecomunicaciones en las Islas Vírgenes de Estados Unidos.

20. La Ley Núm. 80 de 3 de junio de 2011 -"Ley Para la Protección de Secretos Comerciales e Industriales de Puerto Rico," 10 L.P.R.A. § 4131-4141 ("la Ley 80" o "la Ley")- no tiene aplicación alguna al presente litigio.

21. Las alegaciones de la Demanda Enmendada no configuran causa de acción alguna al amparo de la Ley 80.

22. La Ley 80 no está diseñada para proteger la información que se alega en la Demanda Enmendada que constituye Secretos Comerciales.

23. Caribbean no puede establecer que la información que se detalla en la Demanda Enmendada sea un Secreto Comercial (*Trade Secret*) bajo la Ley 80.

24. La definición Secreto Comercial (*Trade Secret*) de la Ley 80 no cubre la información que se detalla en la Demanda Enmendada.

25. BWT no ha adquirido ni divulgado secreto comercial alguno de la parte demandante.

26. BWT no se apropió, ya sea debida o indebidamente, de secreto comercial alguno que perteneciera a la parte demandante.

27. La parte demandante no tomó medida alguna para proteger la confidencialidad de la información que reclama en la Demanda Enmendada que es un secreto comercial.

28. La información que no se utiliza continuamente en la operación de un negocio no se considera secreto comercial. En el presente caso, la información que se aduce que es un secreto comercial o secretos comerciales se refiere a la identidad de los dueños de terrenos adecuados para ubicar determinadas torres de telecomunicaciones, mas una vez ejecutan los contratos de arrendamiento correspondientes con dichos dueños, la información no tiene utilidad alguna.

29. La información que la parte demandante alega que constituye secretos comerciales no le otorga ventaja competitiva alguna a la demandante Caribbean sobre otros competidores. Cualquier utilidad que tuvo tal información cesó antes de que Safreed y BWT terminaran su relación profesional con Caribbean, John Campbell u otras entidades controladas por el señor Campbell.

30. Debido a que cualquier utilidad que pudo tener la información recopilada en fuentes públicas por Safreed cesó antes de que terminara su relación profesional con Caribbean, John Campbell u otras entidades controladas por el señor Campbell es improcedente una orden de interdicto preliminar o interdicto permanente.

31. Ni Safreed ni BWT han contactado a dueños de terrenos para la ubicación de torres de telecomunicaciones permanentes en detrimento de la parte demandante, ya que lo determinante es si existe la oportunidad de hacer negocios con las compañías de comunicaciones que tienen necesidad de tales torres, y la parte demandante no tiene al presente posibilidad alguna de hacer nuevo negocios con tales compañías para la ubicación de torres nuevas; y esa posibilidad había cesado desde antes que la compareciente y Safreed terminaran su relación profesional con Caribbean. AT&T le otorgó exclusividad para esas tareas a otras empresas, no a la parte demandante quien no puede generar ingresos o ganancias de arrendar o ceder arrendamientos de torres de comunicaciones en Islas Vírgenes estadounidenses a AT&T.

8. Puerto Rican Towers Inc. ("PRTI") es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, de la cual Campbell es su Presidente y/o propietario de la mayor parte o la totalidad de sus acciones.

9. PRTI se ha dedica a proveer servicios relacionados con la construcción y arriendo de torres de comunicaciones a compañías de telecomunicaciones tales como AT&T, Sprint y otras.

10. Desde al menos el año 2008, la compañía de telecomunicaciones AT&T es la única empresa en ese giro que ha estado activamente gestionando instalar nuevas torres de telecomunicaciones en las Islas Vírgenes de Estados Unidos.

11. Entre 2008 y el presente, AT&T ha sido la única compañía de telecomunicaciones para la cual se han construido nuevas torres de telecomunicaciones en las Islas Vírgenes estadounidenses, ya sean facilidades de carácter temporero o permanente.

12. Durante el año 2008 Campbell contrató los servicios del co-demandado Safreed para suministrar servicios a favor de PRTI e InSite Wireless en las Islas Vírgenes de Estados Unidos.

13. Los servicios incluyeron la identificación de localizaciones para la construcción de torres de comunicaciones, contactar a los dueños de terrenos para obtener contratos de arrendamiento, gestoría de permisos gubernamentales y otras dirigidas a la construcción de torres que eventualmente serían arrendadas a At&T en las Islas Vírgenes de Estados Unidos.

14. Luego de su incorporación, Caribbean ha provisto servicios de identificar localizaciones y construir nuevas torres de telecomunicaciones en las Islas Vírgenes de Estados Unidos para ceder su uso o arrendarlas a AT&T y/o InSite Wireless LLC. Esta última también arrienda las torres de comunicaciones que posee en Islas Vírgenes de Estados Unidos a AT&T.

15. Como parte de los servicios que prestó a Caribbean, durante el año 2008, Safreed identificó localizaciones para la instalación de torres de comunicación temporeras en diversas áreas de las Islas Vírgenes estadounidenses.

16. En algún momento de 2009 Campbell le informó a Safreed que los negocios y gestiones relacionados con la industria de torres de comunicaciones que realizaba en las Islas Vírgenes de Estados Unidos se conducirían a nombre de Caribbean.

17. A pesar de esa notificación, Campbell continuó realizando gestiones de negocio, contrataciones o pagos de servicios por conducto de la corporación PRTI.

18. Desde finales del año 2009, los servicios que prestaba el Sr. Safreed a Caribbean y a PRTI fueron conducidos por conducto de BWT, corporación controlada por Safreed que fue incorporada en julio de 2009.

19. Como resultado de que AT&T es y ha sido para todas las fechas pertinentes a las reclamaciones incoadas en esta reconvención la única compañía de telecomunicaciones interesada en instalar o utilizar torres de telecomunicaciones en las Islas Vírgenes de Estados Unidos, los esfuerzos de las entidades e individuos que se dedican al negocio de identificar localizaciones para construir ese tipo de torres para alquilarlas van dirigidos a lograr que AT&T alquile las o las torres que desarrollen, construyan o tengan disponibles para uso.

20. Durante el año 2008 Cambell, contando con los servicios de Safreed logró obtener contratos de arrendamiento a favor de InSite Wireless en dos localizaciones de St, Croix en las cuales se instalaron facilidades temporeras de telecomunicaciones que posteriormente arrendó AT&T.

21. Aunque AT&T contaba y cuenta con esas facilidades temporeras para la transmisión de señal celular, sus agentes manifestaron el interés de dicha compañía de arrendar torres de comunicaciones de carácter permanente.

22. Campbell le notificó a Safreed su interés en continuar las gestiones para identificar y retener mediante contratos con los dueños de terrenos, localizaciones para la construcción de torres de telecomunicaciones permanentes para ser arrendadas a AT&T.

23. A principios de 2009 el gobierno de las Islas Vírgenes decretó una moratoria en la construcción de torres permanentes. Esa moratoria fue levantada en algún momento de 2012.

24. Debido a la moratoria, no se pudo construir en las Islas Vírgenes ninguna torre de telecomunicación permanente.

25. A pesar de estar vigente la moratoria antes descrita entre el 2009 y el 2012 Campbell, Caribbean y PTRI contrataron los servicios de Safreed y luego de BWT para identificación de localizaciones para la construcción de torres permanentes de telecomunicaciones y otras relacionadas.

26. Durante el año 2012 AT&T suscribió contratos de exclusividad mediante un "Master Agreement" con cuatro compañías para que fueran sus suplidores de torres de comunicaciones.

27. Las compañías a las que AT&T le extendió el contrato de exclusividad son las conocidas como American Tower, Diamond, Nova y TowerCo.

28. A partir de que se AT&T extendió el Master Agreement dichas compañías adquirieron de parte de AT&T la exclusividad para firmar contratos de arrendamiento con AT&T para el uso de las torres de telecomunicaciones.

29. De conformidad a la nueva política de AT&T solamente arrendaría torres de telecomunicaciones a una de estas cuatro compañías a su solicitud y para el uso de AT&T.

30. InSite Towers LLC, Caribbean y John Campbell fueron notificados por AT&T de la existencia de dicho contrato de exclusividad.

31. Como resultado de la determinación de AT&T y los términos del Master Agreement, para el año 2013 PRTI, Caribbean e InSite Towers LLC no tenían acceso a arrendar torres de comunicaciones a AT&T, a menos que utilizaran como intermediario a una de las cuatro compañías antes indicadas.

32. En o alrededor de marzo de 2013, representantes de TowerCo visitaron las Islas Vírgenes estadounidenses para familiarizarse con las áreas de búsqueda que les proveyó AT&T para la ubicación de torres permanentes.

33. Próximo a esa fecha, oficiales de AT&T en Puerto Rico le proveyeron a TowerCo. el nombre e información de contacto de Brian, Safreed ("Safreed"), Presidente de BWT.

34. En o alrededor del 8 de mayo de 2013, el señor Ariel Tirado ("Sr. Tirado), uno de los ejecutivos de AT&T a cargo de Puerto Rico e Islas Vírgenes estadounidenses, le informó a Safreed que AT&T no podía firmar contratos para el uso de torres nuevas con otras compañías que no fueran aquellas con las cuales suscribió el Master Agreement.

35. En alrededor del 9 de mayo de 2013, el Sr. Tirado le comunicó a John Campbell, Presidente de Caribbean que no continuara realizando gestiones para identificar terrenos para la ubicación de nuevas torres en las Islas Vírgenes estadounidenses.

36. El Sr. Tirado le comunicó a Campbell que las áreas para la ubicación de torres nuevas en las Islas Vírgenes para las cuales no hubiese aún aprobación de AT&T o sobre las que ya hubiera un contrato de arrendamiento del terreno, se asignarían o se re-asignarían para desarrollo a Nova, una de las compañías que ya había firmado el acuerdo de exclusividad con AT&T.

37. Posteriormente AT&T cambió la compañía encargada de identificar localidades, suscribir acuerdos de arrendamiento y construir torres de telecomunicaciones en las Islas Vírgenes estadounidenses a TowerCo.

38. En su comunicación a Campbell, el Sr. Tirado omitió mencionar los proyectos para ubicar torres permanentes en Bonne Esperance/Mary's Fancy y en Work & Rest.

39. La razón para ello es que dichos proyectos ya no figuraban en la lista interna de proyectos de AT&T.

40. Según otra comunicación de Tirado, AT&T había descartado su interés de arrendar torres permanentes en las localidades conocidas como Bonne Esperance/Mary's Fancy y en Work & Rest debido al largo tiempo de había transcurrido desde que había expresado su interés de contar con facilidades de torres de telecomunicaciones permanentes en esas áreas, lo que había ocasionado además que se hubiera eliminado del presupuesto el costo relacionado con el arrendamiento de esas torres.

41. En o alrededor del 14 de mayo de 2013 Brad Wallace, oficial o empleado de TowerCo, le informó verbalmente a Safreed que TowerCo y otras tres compañías tenían los derechos exclusivos para construir nuevas torres para el uso de AT&T.

42. Wallace también le informó a Safreed como representante de BWT que de esas cuatro compañías, solamente TowerCo. tenía interés en instalar torres de telecomunicaciones en las Islas Vírgenes estadounidenses.

43. En julio de 2013 Safreed y BWT terminaron su relación profesional de contratistas independientes y consultores de Caribbean.

44. La razón fundamental para ello es que Campbell y Caribbean habían incumplido una serie de compromisos y representaciones efectuadas a Safreed y BWT.

45. A pesar de los acuerdos de exclusividad que AT&T efectuó en el Master Agreement y la notificación de parte de Tirado a Campbell, a los efectos de que Caribbean ni InSite Towers LLC serían proveedores de torres de comunicaciones para AT&T, durante el año 2013 Caribbean y Campbell le continuaron representando a Safreed y BWT que podrían obtener que AT&T les extendiera un contrato de arrendamiento para varias localidades.

46. La representación que Campbell y Caribbean le hicieron a Safreed y BWT según descrita anteriormente era falsa.

47. Por las razones antes explicadas, para el verano de 2013 Caribbean no tenía trabajo adicional que contratar externamente con Safreed o BWT.

48. El 20 de junio de 2013 BWT suscribió un contrato con Towerco denominado Development Agreement between TowerCo LLC and Blue Wave Tech Corp. for Communication Towers ("Contrato con TowerCo").

49. Mediante ese contrato TowerCo., una de las cuatro compañías que era suplidor exclusivo de torres de telecomunicaciones para AT&T, le extendió a BWT la oportunidad de identificar localidades y desarrollar torres de telecomunicaciones las cuales serían desarrolladas a costo de Towerco, la cual eventualmente arrendaría dichas facilidades a AT&T.

50. Por los servicios que se acordó que BWT prestaría en el contrato con TowerCo. BWT recibiría pago y el reembolso de los gastos incurridos en las gestiones realizadas por BWT por conducto de Safreed.

51. Al amparo del contrato con TowerCo. BWT recibiría ganancias considerables derivada de los servicios de identificación de localidades para la instalación de torres permanentes de telecomunicaciones, contratación con los dueños de terrenos ol localidades, gestoría de permisos gubernamentales, coordinación de construcción y otros relacionados con la extensión de contratos de arrendamiento de las torres a favor de TowerCo.

52. De conformidad al contrato, BWT tenía derecho a cobrar un mínimo de $50,000 dólares por cada torre terminada entregada a TowerCo. más un pago dependiente de l tamaño y utilidad de la torre o facilidad de comunicación.

53. De acuerdo a las necesidades de AT&T en Islas Vírgenes y la pericia y conocimiento con que cuenta BWT, durante el plazo de dos años se hubieran construido no menos de cuatro torres por las gestiones de BWT, las cuales hubieran sido adquiridas por TowerCo. la cual arrendaría las mismas a AT&T u otras compañías de telecomunicaciones.

54. La ganancia que conservadoramente BWT hubiera realizado de las gestiones antes mencionadas al amparo del contrato con TowerCo. se estima en no menos de $500,000 dólares en ese período de dos años.

55. El 7 de marzo de 2014 TowerCo. le notificó a BWT la cancelación del contrato.

56. Esa cancelación fue el resultado de la interferencia torticera que la demandante reconvencionada Caribbean por conducto de John Campbell realizó desde finales de 2013.

57. Entre otra, las acciones que realizó la demandante-reconvencionada por conducto de John Campbell y éste por sí mismo que resultaron en la cancelación del contrato entre TowerCo. y BWT son las siguientes:

   a. La presentación injustificada de una Petición de *injunction* preliminar excesivamente amplia, que no guarda proporcionalidad con los hechos ni con el derecho, basada en hechos falsos o tergiversados;

   b. La obtención de una orden de *injunction* tan amplia que impidió que Safreed, persona por conducto de quien BWT prestaba los servicios a TowerCo. pudiera prestar parte o la totalidad de los servicios que prestaba a TowerCo. al amparo del contrato, aún con relación a localidades y/o torres de comunicaciones que no tienen relación alguna con Caribbean o las entidades que controla Campbell.

   c. Comunicaciones de parte de Campbell en representación de Caribbean y por sí mismo con el Sr. Brad Wallace de TowerCo. en las cuales incitó al Sr. Wallace a que cancelaran el contrato extendido a BWT. En esas

comunicaciones, el Sr. Campbell, representando a Caribbean, degradó al Sr. Safreed y a BWT.

d. Comunicaciones de parte de Campbell en representación de Caribbean y por sí mismo con el Sr. Todd Boyer de TowerCo. en las cuales incitó al Sr. Boyer a que cancelaran el contrato extendido a BWT. En esas comunicaciones, el Sr. Campbell representando a Caribbean y actuando por sí mismo, degradó la gestión que realizaba al Sr. Safreed y a BWT.

e. Comunicaciones de parte de Campbell en representación de Caribbean con el Sr. Ariel Tirado de AT&T mediante las cuales incitó a éste a que AT&T no hiciera negocios con Safreed y/o BWT.

f. Mediante la incitación de parte de Campbell como representante de Caribbean a que oficiales de InSite Wireless presionaran a BWT.

58. Las actuaciones de Campbell constituyen una interferencia torticera con el contrato entre TowerCo. y BWT.

59. Bajo la doctrina de daños prevaleciente en Puerto Rico Caribbean responde por los daños ocasionados por las actuaciones de Campbell.

60. Los daños ocasionados a BWT como consecuencia de las actuaciones de Campbell y Caribbean se estiman en no menos de $500,000.00 más los intereses de esa suma.

EN MÉRITO DE TODO LO CUAL, se solicita muy respetuosamente al Honorable Tribunal que previo los trámites correspondientes se sirva declarar No Ha Lugar la Demanda y la Demanda Enmendada presentada en este caso y en declare Ha Lugar la presente Reconvención y en consecuencia dicte sentencia en la cual se desestime la demanda y se condene a Caribbean Tower Sites LLC a pagar a BWT una suma no menor de $500,000 más las costas y gastos que ocasione este litigio y una suma razonable por concepto de honorarios de abogado, con aquellos otros pronunciamientos que procedan en derecho.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, a 14 de julio de 2014.

**CERTIFICO:** Que en esta misma fecha entregaré personalmente copia fiel y exacta del presente escrito a los abogados de la parte demandante-reconvencionada, **Lcdo. Miguel J. Rodríguez Marxuach** y a la **Lcda. Mónica Echevarría**, Rodríguez Marxuach, PSC.

**NELSON ROBLES DÍAZ LAW OFFICES PSC**
**Abogados de BWT**
PO Box 192302
San Juan, PR 00919-2302
Tel.: (787) 294-9518
Fax: (787)294-9519
nroblesdiaz@gmail.com

**Nelson Robles Díaz**
**Colegiado Núm. 10435, RUA 9158**
