ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE CAROLINA

| | |
|---|---|
| CARIBBEAN TOWER SITES, LLC., <br><br> Demandante-Reconvencionada <br><br> v. <br><br> BRIAN SAFREED, <br><br> Demandado <br><br> BLUE WAVE TECH CORP. <br><br> Demandada-Reconvencionante | CIVIL NÚM.: FPE 2013-0583 (402) <br><br> TRASLADADO DE SALA SUPERIOR DE SAN JUAN CIVIL NÚM.: KEP 2013-4109 <br><br> SOBRE: <br><br> APROPIACIÓN INDEBIDA DE SECRETOS COMERCIALES; INTERDICTO PRELIMINAR Y PERMANENTE; DAÑOS Y PERJUICIOS. |

**CONTESTACIÓN DE CARIBBEAN TOWER SITES, LLC
A RECONVENCIÓN DE BLUE WAVE TECH CORP.**

AL HONORABLE TRIBUNAL:

COMPARECE Caribbean Towers Sites, LLC ("Caribbean"), por conducto de sus abogados que suscriben, muy respetuosamente somete su contestación a la reconvención fechada 14 de julio de 2014 (la "Reconvención"), sometida por Blue Wave Technologies Corp. ("Blue Wave") como sigue:

**CONTESTACIÓN**

1. El párrafo No. 1 de la Reconvención no requiere alegación responsiva. Si la requiriese, el mismo se niega.

2. Se admite el párrafo No. 2 de la Reconvención.

3. Se admite el párrafo No. 3 de la Reconvención.

4. Se admite el párrafo No. 4 de la Reconvención.

5. Se admite el párrafo No. 5 de la Reconvención.

6. Se admite el párrafo No. 6 de la Reconvención.

7. Se niega el párrafo No. 7 de la Reconvención. Se alega afirmativamente que Caribbean nunca suscribió un contrato por servicios con Blue Wave. Fue con Brian Safreed ("Safreed") que se había entró en un contrato por servicios para la identificación y arrendamiento de terrenos, entre otros.

8. Se admite el párrafo No. 8 de la Reconvención. Se alega afirmativamente, sin embargo, que el nombre correcto de la corporación es Puerto Rican Tower Company, Inc. ("PRTCI").

9. Se niega el párrafo No. 9 de la Reconvención. PRTCI se dedica al arrendamiento y administración de torres de telecomunicaciones existentes.

10. Se niega el párrafo No. 10 de la Reconvención. Se alega afirmativamente que otras compañías, tales como Innovative y Choice Wireless, están también activas en ese mercado.

11. Se niega el párrafo No. 11 de la Reconvención. Se alega afirmativamente que otras compañías, tales como Innovative y Choice Wireless, están también activas en ese mercado..

12. El párrafo No. 12 de la Reconvención se niega y se admite en parte. Se admite que en el 2008 Campbell contrató los servicios del demandado Safreed inicialmente para beneficio de PRTCI. Se alega afirmativamente, sin embargo, que poco tiempo después los servicios de Safreed comenzaron y continuaron siendo provistos a Caribbean. Más aún, se niega que Safreed proveyera servicios directamente a InSite Wireless Group, LLC ("InSite"), excepto por algunos pocos servicios sencillos de mantenimiento a torres de telecomunicaciones. Al principio PRTCI y posteriormente Caribbean, tenían un contrato para desarrollar, construir y vender facilidades de telecomunicaciones en las Islas Vírgenes de los Estados Unidos ("USVI" por sus siglas en inglés) por y para InSite. Según este acuerdo, InSite pagaba a Caribbean por el desarrollo, construcción y venta de terrenos para telecomunicaciones. Safreed proveía servicios a Caribbean que en última instancia podrían haber beneficiado a InSite, pero Safreed nunca trabajó directamente para InSite en el desarrollo, construcción y adquisición de facilidades de telecomunicaciones.

13. Se admite y se niega en parte el párrafo No. 13 de la Reconvención. Se admite que Caribbean contrató a Safreed para

rendir los servicios descritos en el párrafo No. 13 de la Reconvención. Se niega que AT&T es o fuera la única compañía a la cual Caribbean arrienda o arrendaba facilidades de telecomunicaciones.

14. Se niega el párrafo No. 14 de la Reconvención. Se alega afirmativamente que Caribbean no prove los mismos servicios a AT&T e InSite. Según el acuerdo existente entre InSite y Caribbean, InSite paga a Caribbean por el desarrollo, construcción y venta de terrenos para telecomunicaciones. Por otra parte, Caribbean identifica, desarrolla y construye terrenos para torres de telecomunicacioens que luego arrienda temporera o permanentemente a AT&T o cualquier otra compañía. Se niega que Caribbean provea esos servicios exclusivamente a AT&T.

15. Se admite el párrafo No. 15 de la Reconvención.

16. Con respecto al párrafo No. 16 de la Reconvención, se admite que algún tiempo después de que Safreed fuese contratado por Campbell se decidió y Safreed fue informado, que los servicios para el desarrollo, construcción, operación y venta de nuevas facilidades de telecomunicaciones en USVI serían conducidos a través de Caribbean.

17. Se niega el párrafo No. 17 de la Reconvención. Se alega afirmativamente que PRTCI continua existiendo como corporación. También se alega que todos los pagos efectuados por PRTCI a Safreed u otros por servicios brindados a Caribbean, constituyen préstamos entre compañías afiliadas.

18. Se niega el párrafo No. 18 de la Reconvención. Se afirma, sin embargo, que Safreed solicitó a Caribbean que hiciera pagos a Blue Wave por concepto de servicios brindados por Safreed, pero Blue Wave nunca tuvo un contrato con Caribbean.

19. Se niega el párrafo No. 19 de la Reconvención. Se alega afirmativamente que AT&T no es la única entidad interesada en el desarrollo, construcción, arrendamiento o compra de torres de telecomunicaciones en las USVI.

20. Con respecto al párrafo No. 20 de la Reconvención, se admite que las dos facilidades en cuestión fueron desarrolladas por Caribbean y eventualmente fueron vendidas a InSite. Se niegan el resto de las alegaciones en ese párrafo.

21. Se admite el párrafo No. 21 de la Reconvención.

22. Con respecto al párrafo No. 22 de la Reconvención, se niega que AT&T es la única compañía a la cual Caribbean arrienda torres de telecomunicaciones, pero se admite que Campbell solicitó a Safreed que continuara sus esfuerzos para identificar terrenos para torres de telecomunicaciones que pudieran ser posteriromente arrendadas en forma permanente.

23. Se admite el párrafo No. 22 de la Reconvención.

24. Se admite el párrafo No. 24 de la Reconvención.

25. Se niega el párrafo No. 25 de la Reconvención. Se alega afirmativamente que PRTCI, por medio de su Presidente Campbell, retuvo los servicios del demandado Safreed para, entre otros servicios, identificar facilidades de telecomunicaciones que pudieran ser arrendadas en forma permanente una vez terminara el período de moratoria del gobierno de USVI. Mientras la mencionada moratoria estaba en vigor no se arrendaron facilidades de telecomunicaciones con carácter permanente.

26. Con respecto al párrafo No. 26 de la Reconvención, se admite que en algun momento durante el año 2012, AT&T y American Tower, Diamond, Nova y TowerCo firmaron un contrato para el desarrollo, construcción, arrendamiento y venta de nuevas facilidades de telecomunicaciones en USVI. Se niega, sin embargo, que Caribbean y/o otras compañías en situación similar

estuvieran impedidas de hacer negocios con AT&T en USVI. Por información y creencia, el acuerdo al cual se hace referencia solamente provee a esas compañías un derecho de tanteo ("right of first refusal") para el desarrollo, construcción y arrendamiento de nuevas torres de telecomunicaciones para el uso de AT&T en USVI, pero AT&T es libre de hacer negocios con otras compañías para el arrendamiento de espacio en facilidades de telecomunicaciones existentes en USVI o para la firma de contratos para nuevas torres de telecomunicaciones en el área si una de estas cuatro compañías no puede o no quiere cumplir con los requerimientos de AT&T.

27. Con respecto al párrafo No. 27 de la Reconvención, se admite que las cuatro compañías en cuestión son American Tower, Diamond, Nova y TowerCo. Se niega que el contrato impide a Caribbean hacer negocios con AT&T en USVI. Véase, respuesta al párrafo No. 26.

28. Se niega el párrafo No. 28 de la Reconvención. Véase, respuesta al párrafo No. 26.

29. Se niega el párrafo No. 29 de la Reconvención. Véase, respuesta al párrafo No. 26.

30. Con respecto al párrafo No. 30, se admite que Caribbean y Campbell fueron informados por AT&T de la existencia del referido contrato. Se niega, por falta de información y creencia, que InSite también fuera informado.

31. Se niega el párrafo No. 31 de la Reconvención.

32. Se niega el párrafo No. 32 de la Reconvención por falta de información y creencia.

33. Se niega el párrafo No. 33 de la Reconvención por falta de información y creencia.

34. Se niega el párrafo No. 34 de la Reconvención por falta de información y creencia.

35. Con respecto al párrafo No. 35 de la Reconvención, se admite que el señor Tirado se comunicó con Campbell y le informó acerca del mencionado acuerdo. Se niega, sin embargo, que ese acuerdo impedía o impide a Caribbean hacer negocios con AT&T en USVI. *Véase*, respuesta al párrafo No. 26 de la Reconvención.

36. Se niega el párrafo No. 36 de la Reconvención. Se alega afirmativamente que AT&T no tiene un acuerdo de exclusividad con compañía alguna que impida a Caribbean hacer negocios con AT&T en USVI.

37. Se niega el párrafo No. 37 de la Reconvención por falta de información y creencia.

38. Se niega el párrafo No. 38 de la Reconvención. Se alega afirmativamente que el referido acuerdo entre AT&T y American Tower, Diamond, Nova y TowerCo no impide a Caribbean hacer negocios con AT&T en USVI. *Véase*, respuesta al párrafo No. 26 de la Reconvención.

39. Se niega el párrafo No. 39 de la Reconvención.

40. Se niega el párrafo No. 40 de la Reconvención.

41. Se niega el párrafo No. 41 de la Reconvención por falta de información y creencia.

42. Se niega el párrafo No. 42 de la Reconvención por falta de información y creencia.

43. Con respecto al párrafo No. 43 de la Reconvención, se admite que en alrededor del mes de julio de 2013 Safreed informó a Campbell que no continuaría trabajando para Caribbean. Se niega, sin embargo, que Blue Wave haya tenido un contrato con Caribbean.

44. Se niega el párrafo No. 44 de la Reconvención. Se alega afirmativamente que Caribbean nunca incumplió con el acuerdo entre Safreed y Caribbean.

45. Con respect al párrafo No. 45 de la Reconvención, se niega que el acuerdo entre AT&T y American Tower, Diamond, Nova,

y TowerCo impida a Caribbean a hacer negocios con AT&T en las USVI, pero se admite que Caribbean solicitó a Safreed a continuar con su trabajo en USVI.

46. Se niega el párrafo No. 46 de la Reconvención.

47. Se niega el párrrafo No. 47 de la Reconvención.

48. Se niega el párrafo No. 48 de la Reconvención por falta de información y creencia.

49. Se niega el párrafo No. 49 de la Reconvención por falta de información y creencia.

50. Se niega el párrafo No. 50 de la Reconvención por falta de información y creencia.

51. Se niega el párrafo No. 51 de la Reconvención por falta de información y creencia.

52. Paragraph #52 is denied because of lack of information or belief.

53. Se niega el párrafo No. 53 de la Reconvención.

54. Se niega el párrafo No. 54 de la Reconvención

55. Se niega el párrafo No. 55 de la Reconvención por falta de información y creencia.

56. Se niega el párrafo No. 56 de la Reconvención.

57. Se niega el párrafo No. 57 de la Reconvención en todas sus partes. Con respecto a la subsección (c), se alega afirmativamente que Campbell solo informó a Brad Wallace de TowerCo sobre hechos relativos a la conducta y acciones de Safreed hacia Caribbean.

58. Se niega el párrafo No. 58 de la Reconvención.

59. El párrafo No. 59 de la Reconvención es una conclusión de derecho y no requiere alegación responsiva. Si la requiriera, la misma expresamente se niega.

60. Se niega el párrafo No. 60 de la Reconvención.

## DEFENSAS AFIRMATIVAS

1. Nunca existió un contrato de servicios entre Blue Wave y Caribbean.

2. Ni Caribbean ni sus representantes, incluyendo John Campbell, interfirieron torticeramente con contrato alguno de Blue Wave.

3. Cualquier causa de acción por culpa extracontractual contra Caribbean está prescrita.

4. No existen los elementos necesarios para configurar una causa de acción por interferencia torticera contra Caribbean, ya que: (1) esta desconocía del alegado contrato entre Safreed y/o Blue Wave y TowerCo; (2) Caribbean nunca tuvo la intención de infligir daño alguno a Safreed y/o Blue Wave; y (3) no existe relación causal sobre las alegadas actuaciones de Caribbean y sus representantes y la alegada terminación de la relación contractual entre TowerCo y Blue Wave, si alguna.

5. Los daños alegadamente sufridos por Blue Wave son exagerados.

6. Los daños alegadamente sufridos por Blue Wave fueron autoinfligidos.

7. Los daños alegadamente sufridos por Blue Wave son el resultado de las actuaciones de terceros.

8. Caribbean y sus representantes nunca llevaron a cabo acto alguno que redundase en daños para Blue Wave.

9. Caribbean y sus representantes nunca hicieron expresiones con respecto a Blue Wave o Safreed que no fueran totalmente ciertas.

10. Blue Wave no incluyó partes indispensables en la Reconvención.

11. La Reconvención no expone una reclamación que justifique un remedio.

12. Caribbean se reserva expresamente el derecho de enmendar esta contestación para incluir defensas adicionales según surja información del descubrimiento de prueba.

**CERTIFICO** que en esta misma fecha envié copia fiel y exacta de esta moción, por correo regular al **Lcdo. Jose Luis González Castañer y Lcdo. Roberto A. Fernández Quiles**, 128 F.D. Roosevelt Ave., 2ndo Piso, San Juan, Puerto Rico 00918-2409; **Lcdo. Jesús Morales Cordero** a PO Box 363085 San Juan, PR 00936-3085; y **Lcdo. Nelson Robles Díaz** a PO Box 192302 San Juan, PR 00919-2302.

RESPETUOSAMENTE SOMETIDA.

En San Juan, Puerto Rico, hoy día 18 de agosto de 2014.

RODRÍGUEZ MARXUACH, P.S.C.
P.O. Box 16636
San Juan, Puerto Rico 00908-6636
Tel (787) 754-9898
Fax (787) 754-9897

_____
MIGUEL J. RODRÍGUEZ MARXUACH
RUA Núm. 9505
mrm@rmlawpr.com

_____
MÓNICA ECHEVARRÍA GARCÍA
RUA Núm. 18622
meg@rmlawpr.com

RODRÍGUEZ MARXUACH, P.S.C.
P.O. Box 16636
San Juan, Puerto Rico 00908-6636

Lcdo. Jose Luis González Castañer
Lcdo. Roberto A. Fernández Quiles
128 F.D. Roosevelt Ave., 2ndo Piso
San Juan, Puerto Rico 00918-2409

AUG 20 2014

RECEIVED



02 1P
0004488673 AUG 18 2014
MAILED FROM ZIP CODE 00918
UNITED STATES POSTAGE
$000.690
PITNEY BOWES